**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
.

| | |
|---|---|
| **IN RE: ONIX GROUP, LLC DATA BREACH LITIGATION** | Case No. 23-2288-KSM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Benjamin F. Johns (PA Bar 201373)
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
bjohns@shublawyers.com

Gary M. Klinger
**MILBERG COLEMAN**
**BRYSON PHILLIPS**
**GROSSMAN PLLC**
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
gklinger@milberg.com

*Interim Co-Lead Class Counsel*
*[Additional Counsel on Signature Page]*

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ............................................................................................ 1

II.     Factual background ...................................................................................... 2

        A.    The Litigation ..................................................................................... 2

        B.    Settlement Negotiations ..................................................................... 3

III.    THE PROPOSED SETTLEMENT ............................................................. 4

        A.    The Proposed Settlement Class ........................................................ 4

        B.    The Release ......................................................................................... 4

        C.    Compensation to Class Members ..................................................... 4

              1.    Documented Loss Payments .................................................... 4

              2.    Credit Monitoring and Insurance Services ............................ 5

              3.    Cash Fund Payment ................................................................. 5

              4.    Data Security Commitments .................................................... 6

        D.    The Notice and Claim Process .......................................................... 6

              1.    Notice ........................................................................................ 6

              2.    Claims ........................................................................................ 7

              3.    Requests for exclusion and objections .................................... 7

        E.    Residual ............................................................................................... 8

        F.    Proposed Class Representative Service Awards ............................. 8

        G.    Attorneys' Fees and Expenses .......................................................... 9

IV.     ARGUMENT ................................................................................................ 10

        A.    The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) and *Girsh* Factors for Preliminary Approval. ........................................................ 11

i

1.   The Proposal Was Negotiated at Arm's Length..........................................................12

2.   The Relief Provided for the Class Is Adequate. ........................................................12

3.   The Settlement Treats Class Members Equitably Relative to Each Other...................16

4.   The Settlement Satisfies all of the Applicable *Girsh* Factors. ....................................17

B.   The Proposed Settlement Class Satisfies the Criteria of Rule 23(a)...............................18

1.   The Class Is Sufficiently Numerous...........................................................................18

2.   There Are Questions of Law or Fact Common to the Class. .......................................18

3.   The Class Representatives' Claims Are Typical of the Claims of the Class. ..............19

4.   The Class Representatives and Co-Lead Counsel Will Fairly and Adequately
     Represent the Class. ...................................................................................................20

5.   Common Issues Predominate over any Individual Issues and a Class Action Is
     Superior to Other Available Methods of Adjudicating the Controversy. ...................20

C.   The Notice Program Provides Class Members with the Best Notice Practicable Under the
     Circumstances. ................................................................................................................22

1.   Notice Will Reach Significant Numbers of Class Members. .......................................23

2.   The detailed notice form and settlement website clearly and concisely inform Class
     Members about their rights and options, including how to file a claim......................23

V.   INTERIM CO-LEAD COUNSEL SHOULD BE PROVISIONALLY APPOINTED AS
     CLASS COUNSEL ............................................................................................................24

VI.  CONCLUSION ..............................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Facebook, Inc.*,
No. 18-cv-05982, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ...................................... 14

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
No. 21-cv-2157, 2023 WL 4139151 (E.D. Pa. June 22, 2023) .......................................... 15

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................. 18, 22

*Brady v. Due North Holdings, LLC*,
No. 17-cv-01313 (S.D. Ind. Oct. 16, 2018) ...................................................................... 14

*Breneman v. Keystone Health*,
No. 22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023) ................................................................... 5

*Checchia v. Bank of Am., N.A.*,
No. 21-cv-3585, 2023 WL 2051147 (E.D. Pa. Feb. 16, 2023) ........................................... 18

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ............................................................................................. 10

*Fulton-Green v. Accolade, Inc.*,
No. 18-cv-00274, 2019 WL 316722 (E.D. Pa. Jan. 23, 2019) ............................... 11, 18, 19

*Fulton-Green  v. Accolade, Inc.*,
No. 18-cv-0274, 2019 WL 4677954 (E.D. Pa. Sept. 23, 2019) .......................................... 21

*Fulton-Green v. Accolade, Inc.*,
No. 18-cv-0274, 2019 WL 316722 (E.D. Pa. Jan. 13, 2019) ....................................... 13, 22

*Galt v. Eagleville Hosp.*,
310 F. Supp. 3d 483 (E.D. Pa. 2018) .................................................................................. 9

*Gates v. Rohm & Haas Co.*,
248 F.R.D. 434 (E.D. Pa. 2008) .......................................................................... 12, 13, 18

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ....................................................................................... 10, 17

*Gordon v. Chipotle Mexican Grill, Inc.*,
No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ........................................ 17

*Hall v. Accolade, Inc.*,
No. 17-cv-03423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) .................................. 10, 19

*In re Canon U.S.A. Data Breach Litig.,*
  No. 20-cv-6239, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023) .......................................... 15

*In re CertainTeed Fiber Cement Siding Litig.,*
  303 F.R.D. 199 (E.D. Pa. 2014) ........................................................................................ 14

*In re Flonase Antitrust Litig.,*
  291 F.R.D. 93 (E.D. Pa. 2013) .......................................................................................... 18

*In re Hope College Data Sec. Breach Litig.,*
  No. 22-cv-01224-PLM (W.D. Mich. Jan. 3, 2024) ...................................................... passim

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.,*
  296 F.R.D. 351 (E.D. Pa. 2013) ........................................................................................ 20

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.,*
  No. 17-cv-341, 2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) ......................................... 15

*In re Nat'l Football League Players Concussion Injury Litig.,*
  821 F.3d 410 (3d Cir. 2016) .............................................................................................. 19

*In re Nat'l Football League Players' Concussion Injury Litig.,*
  301 F.R.D. 191 (E.D. Pa. 2014) ......................................................................... 12, 18, 24

*In re Processed Egg Prods. Antitrust Litig.,*
  284 F.R.D. 249 (E.D. Pa. 2012) ......................................................................... 13, 21, 22

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.,*
  No. 11-md-02258 (S.D. Cal. May 4, 2015) ....................................................................... 14

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,*
  No. 13-md-2445, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ..................................... 10, 17

*In re Wawa, Inc. Data Sec. Litig.,*
  No. 19-cv-6019, 2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) ..................................... 17, 19

*In re Wawa,Inc. Data Sec. Litig.*
  No. 19-cv-6019, 2021 WL 3276148 (E.D. Pa. July 30, 2021) .......................................... 21

*Kelly, v. Santander Consumer USA, Inc.,*
  No. 20-cv-3698, 2023 WL 8701298 (E.D. Pa. Dec. 15, 2023) ......................................... 18

*Linnins v. Haeco Americas, Inc. (f/k/a Timco Aviation Services, Inc.),*
  No. 16-cv-00486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018) ...................................... 14

*McDermid v. Inovio Pharma., Inc.,*
  No. 20-cv-01402, 2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ............................................ 9

*McIntyre v. RealPage, Inc.*,
   No. 18-cv-03934, 2023 WL 2643201 (E.D. Pa. Mar. 24, 2023) ......................... 15

*Mehling v. New York Life Ins. Co.*,
   246 F.R.D 467 (E.D. Pa. 2007) ........................................................................ 11

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ......................................................................................... 23

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. 2012) .................................................................... 9, 10

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
   No. 18-cv-1370, 2020 WL 3481458 (W.D. Pa. June 26, 2020) ......................... 15

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ........................................................................ 16, 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................... 18

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
   726 F.2d 956 (3d Cir. 1983) ............................................................................. 16

*In re: Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ............................................................................. 18

**Rules & Regulations**

Fed. R. Civ. P. 23(b)(3) ............................................................................... 21, 22

Fed. R. Civ. P. 23(e) .................................................................................... 10, 17

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................ 10

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................ 10

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 11

Fed. R. Civ. P. 23(e)(3) ...................................................................................... 16

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................ 24

## I.    INTRODUCTION

Plaintiffs Eric Meyers, Donald Owens, Aida Albino Wimbush, Ashtyn Mark, Leah Simione, Melissa Lyston, and Angela Haynie ("Plaintiffs") and Defendant Onix Group, LLC. ("Onix" or "Defendant"), with the assistance of a well-respected mediator, Bennett G. Picker of Stradley Ronon Stevens & Young LLP, have reached an agreement to resolve this class action for a $1,250,000 non-reversionary common fund. Pursuant to the terms set forth in the Parties' Settlement Agreement (the "Settlement Agreement" or "S.A.")[1] Plaintiffs now respectfully submit this memorandum of law in support of the accompanying motion ("Motion").  The Motion asks the Court to enter an order preliminarily approving the settlement ("Settlement"), provisionally certifying the Settlement Class, and direct that notice of the Settlement be disseminated to members of the Class Defendant does not oppose this motion or the relief sought in this motion.

The Settlement provides that Settlement Class Members may submit a claim for one of the following settlement benefits from the $1.25 million Settlement Fund: up to $5,000 for reimbursement of documented losses, one year of three bureau credit monitoring services, including $1 million in identity theft insurance, or a Cash Fund Payment. S.A. ¶ 3.2. The Settlement also provides for significant business practice changes tailored towards strengthening Onix's data security measures.

The Settlement compares favorably with settlements in similar data breach litigation and was reached only after intensive arm's length negotiations before a skilled and engaged mediator. *See* Exhibit 2, the Joint Declaration of Benjamin F. Johns and Gary M. Klinger In Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action Settlement ("Counsel

---

[1] The Settlement Agreement is attached hereto as Exhibit 1. Unless otherwise indicated, capitalized terms herein shall have the same definition as set forth in the Settlement Agreement.

Decl."), *passim*. It represents an especially outstanding result considering some of the legal and practical hurdles Plaintiffs would have faced had the case proceeded to litigation – including that a large portion of the putative class was deceased.  Also, Onix contends there was no evidence that the party responsible for the Data Breach (a ransomware shakedown) had ever actually viewed the information at issue. Accordingly, Plaintiffs respectfully submit that the Court should preliminarily approve the terms and conditions of the Settlement and permit notice to the Settlement Class.

## II.      FACTUAL BACKGROUND

### A.      The Litigation

Beginning in June of 2023, numerous class actions were filed in this Court on behalf of consumers whose information was stolen by cybercriminals as part of a cyberattack against Onix. On July 19, 2023, Judge Karen Spencer Martson entered an order consolidating the cases relating to the Data Incident. (Dkt. 14.) In this order, the Court appointed Bejamin F. Johns, Esq. of Shub & Johns LLC and Gary M. Klinger, Esq. of Milberg Coleman Bryson Phillips Grossman PLLC as Interim Co-Lead Counsel for the Plaintiffs.

On September 15, 2023, Plaintiffs filed the operative Consolidated Class Action Complaint (Dkt. 18) ("Complaint"), which asserted claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, and violations of state consumer protection and data privacy statutes. The Complaint alleged, among other things, that despite the foreseeability of a data breach, Onix failed to implement adequate measures to protect the sensitive information entrusted to it by its customers. The Complaint also alleged that many Class Members have spent time responding to the security incident, may have spent money for protective measures, and were at an increased risk of future misuse of their information. The Complaint sought to remedy those harms through, among other things, reimbursement of out-of-pocket losses

and compensation for time spent in response to the Data Security Incident, as well as injunctive relief entailing substantial improvements to Defendant's data security systems.

**B.    Settlement Negotiations**

On November 1, 2023, Onix filed an unopposed motion to extend its time to respond to the Complaint so that the Parties could focus their efforts on preparing for a mediation that had been scheduled for November 20, 2023 with Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. In anticipation of the mediation, Plaintiffs served Onix with several requests for documents and information relevant to the Data Breach. Onix provided Plaintiffs' counsel with written responses on or around November 14, 2023. The parties also exchanged mediation statements that addressed the strengths and weaknesses of the claims and defenses, including both on the merits and class certification. Of particular note, during the mediation, Onix disclosed that close to 21% of the proposed class may be deceased and then argued those class members did not have standing to bring any claims.

While the November 20, 2023 mediation was productive, it did not result in the resolution of this case. Counsel Decl., ¶ 11.  Instead, the day concluded with Mr. Picker making a double-blind mediator's proposal to both Plaintiffs and Defendant. Counsel Decl., ¶ 11. Over the course of the following days, the Parties accepted the mediator's proposal. Counsel Decl., ¶ 12.

Following their agreement in principle to settle the matter, on December 1, 2023, the Parties filed a joint motion to stay these proceedings. On December 4, 2023, the Court issued an order granting the Parties until January 18, 2023 to file Plaintiffs' Motion for Preliminary Approval. Over the past two months, the Parties have worked to finalize the finer points of the Settlement. The Settlement Agreement was executed on or about February 20, 2024 and Plaintiffs now respectfully request that the Court grant this Motion for Preliminary Approval and allow Notice to be sent to the Settlement Class.

### III.    THE PROPOSED SETTLEMENT

#### A.  The Proposed Settlement Class

The Proposed Settlement Class is defined as:

All 308,942 natural persons whose Private Information was compromised in the Data Breach and who have not been confirmed to be deceased. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Onix, its subsidiaries, parent companies, successors, predecessors, and any entity in which Onix or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

S.A. ¶ 1.41.

#### B.    The Release

In exchange for the Settlement Benefits provided for under the Settlement Agreement, Class Members will release any and all claims against Onix and its Released Parties as set forth in the Settlement Agreement. The release is tailored to cover the claims that were asserted or that could have been asserted by Class Members related to the Data Breach.

#### C.    Compensation to Class Members

As noted above, the Settlement provides for a $1,250,000 non-reversionary Settlement Fund (*id*. ¶ 1.14) that will be used to pay for Administrative Expenses, taxes, any Service Awards, and any Fee Award and Costs (*id*. ¶ 3.8). The remaining amount, i.e., the Net Settlement Fund, will be used to pay for Approved Claims submitted by Class Members for Settlement Benefits. Class Members may submit a claim for only one of the following Settlement Benefits:

##### 1.    Documented Loss Payments

Class Members may submit a Documented Loss Payment claim seeking up to $5,000 per person for the reimbursement of Documented Losses with Reasonable Documentation. SA ¶¶ 1.15, 3.3(a). Documented Losses must be supported by reasonable documentation to show that the

claimed loss is more likely than not a result of the Data Incident. *Id*. Any claim for a Documented Loss Payment that is rejected, if not timely cured, will instead be considered for a Cash Fund Payment. *Id*. ¶ 3.3(a).

### 2.    Credit Monitoring and Insurance Services

Class Members will also have the option of claiming 12 months of Credit Monitoring and Insurance Services ("CMIS"). SA ¶ 3.3(b). The CMIS benefit will provide at a minimum three credit bureau monitoring services and $1 million in identity theft insurance. *Id*. CMIS benefits will be available to Class Members irrespective of whether they took advantage of any previous offering of credit monitoring from Defendant. *Id*.  Class Members successfully claiming the credit monitoring service will have 12 months to activate it. *Id*.

### 3.    Cash Fund Payment

Class Members may submit a claim for a pro rata cash payment without any supporting documentation. *Id*. ¶ 3.3(c). The amount of money each Class Member who submits an Approved Claim will receive will be calculated as follows:

> The Settlement Fund shall be used to make payments for the following: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) the costs of providing the CMIS; (iv) Approved Claims for Documented Loss Payments (up to $5,000 per claim); and (v) Approved Claims for Cash Fund Payments. The value of the Cash Fund Payments will be calculated by subtracting from the Settlement Fund the expenses listed as (i) to (iv) in the preceding sentence (i.e., the Net Settlement Fund). The Net Settlement Fund shall then be divided evenly by the total number of valid claims submitted by Class Members.

*Id.* ¶ 3.8. This settlement benefit allocation structure has been approved by courts in other data breach settlements. *See, e.g., Breneman v. Keystone Health*, No. 22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023); *In re Hope College Data Sec. Breach Litig.,* No. 22-cv-01224-PLM (W.D. Mich. Jan. 3, 2024).

### 4.    Data Security Commitments

In addition to the foregoing Settlement Benefits, the Parties also have agreed as part of the Settlement, Onix will adopt, continue, and/or implement certain data security and privacy improvements designed to protect against similar data security incident in the future. *See id.* ¶ 2.1. The agreed upon security commitments are designed to maintain Defendant's security posture, and provide protection against threats now and in the future. *Id.* These security enhancements directly benefit the Settlement Class (without the need for a claim filing requirement) on a prospective basis, and Onix has agreed to confirm compliance with these measures to Class Counsel at their request on an ongoing basis. *Id.*

### D.    The Notice and Claim Process

#### 1.    Notice

The Parties selected the Angeion Group as the settlement administrator through a competitive bidding process. The Angeion Group is a nationally recognized claims administrator that has handled dozens of similar data breach settlements across the country. Its resume is attached as **Exhibit 3**. All costs of the notice and settlement administrator will be deducted from the Settlement Fund. *Id.* ¶ 1.39. The Notice Plan provides for individual Notice to Class Members by direct U.S. mail – the same way Class Members were initially notified of the Data Breach. *Id.* ¶ 6.3. The Settlement Administrator will send the direct-mail notices after running the class list through the National Change of Address Registry, and taking other steps to ensure that notice reaches a percentage of the class consistent with due process.

The Settlement Administrator will also establish a dedicated Settlement Website that will inform Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines, and related information. SA ¶ 6.7. The Settlement Website shall include relevant documents, including the following: (i) the Long Notice; (ii) the Claim Form, which will be available to

download or submit electronically; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; (v) the operative Class Action Complaint, filed in the Action before this Court; (vi) the motion for a Fee Award and Costs and Service Awards after it is filed; and (vii) any other materials agreed upon by the Parties and/or required by the Court. Class Members will be able to submit Claim Forms and Requests for Exclusion through the Settlement Website. *Id.* The Settlement Administrator will also create a toll-free help line so Class Members can obtain additional Settlement information. *Id.*

### 2.    Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Class Members will have until ninety (90) days after the notice is issued to complete and submit their Claim Form to the Settlement Administrator, either by mail or online. SA ¶ 3.5. The Claim Form is written in plain language to facilitate Class Members' ease in completing it. SA, at Exhibit A (Claim Form). The Settlement Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. SA ¶ 3.6. Should a claim be incomplete or defective, the Settlement Administrator shall request additional information and give the claimant thirty (30) days to cure the defect. *Id.* Moreover, where a Class Member files a claim for a Documented Loss that is rejected, and the Class Member fails to cure that claim, the claim instead will be considered as a claim for a Cash Fund Payment. *Id.* ¶ 3.3(a).

### 3.    Requests for exclusion and objections

Class Members will have sixty (60) days from the Notice Date to object to or to submit a request for exclusion from the Settlement. *Id.* ¶¶ 6.8, 6.9. Similar to the timing of the claims

process, the timing with regard to objections and Requests for Exclusion is structured to give Class Members sufficient time to access and review the Settlement documents.

In order for a Class Members submit a Request for Exclusion to the Settlement, he or she must strictly comply with the requirements of the SA. *See* SA ¶ 6.8. Any Class Member who timely requests exclusion shall not (i) be bound by any Final Approval Order or the Judgment; (ii) be entitled to the Settlement Benefits under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement. *Id.*

Any Class Member who wishes to object shall submit a timely written notice of his or her objection by the Objection Deadline, which like the Opt-Out Period, is sixty (60) days following the Notice Date. SA ¶¶ 1.30, 6.9. Any objection must strictly comply with the Settlement Agreement's requirements. SA ¶ 6.9. Any Class Member who does not make their objections timely and in the manner prescribed by the Settlement Agreement waives their objection and is forever barred from raising objections in this or any other action or proceeding, absent further order of the Court. *Id.*

## E.    Residual

To the extent any monies remain in the Net Settlement Fund more than 120 days after the distribution of Settlement Payments, a subsequent Settlement Payment will be evenly made to all Class Members with Approved Claims for Cash Fund Payments who cashed or deposited the initial payment they received, assuming such payment is over $3.00. *Id.* ¶ 3.10. Should any remaining amount of the Net Settlement Fund be economically not distributable, the Parties shall petition the Court for permission to distribute the remaining funds to an approved non-profit recipient, providing the Court with details of the proposed non-profit recipient. *Id.*

## F.    Proposed Class Representative Service Awards

Plaintiffs have been dedicated and active participants on behalf of the class they seek to

represent. Counsel Decl. ¶ 33. They assisted in the investigation of the matter prior to and after retaining counsel, provided relevant information to their counsel, reviewed and approved complaints, kept in close contact with counsel to monitor the progress of the litigation, and reviewed and communicated with their counsel regarding the Settlement. *Id.*, at ¶ 35. Each Plaintiff put their name and reputation on the line for the sake of the Class, and the recovery would not have been possible without their efforts. *Id.*, at ¶ 34. In view of these efforts, on behalf of Plaintiffs, counsel will separately petition the Court for approval of Service Awards in the amount of up to $1,000 to each Plaintiff. SA ¶ 8.1. This amount is consistent with those approved in other data breach class action settlements. The Settlement is not conditioned upon the Court's award of any Service Payments. *Id.* ¶ 8.3. Service Awards will be paid from the Settlement Fund. *Id.* ¶ 8.2.

G.     **Attorneys' Fees and Expenses**

As part of the Settlement, Plaintiffs will separately file a motion for an award of attorneys' fees and reimbursement of litigation costs and expenses. *Id.* ¶ 9.1. Plaintiffs' counsel intend to request up to 33.3% of the Settlement Fund (i.e., $416,666), consistent with attorneys' fee awards and percentage for such awards under Pennsylvania and Third Circuit law. *Id.*; *see, e.g., McDermid v. Inovio Pharma., Inc.,* No. 20-cv-01402, 2023 WL 227355, at *12 (E.D. Pa. Jan. 18, 2023) ("In common fund cases, fee awards generally range from 19% to 45% of the settlement fund.") (citing *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 498 (E.D. Pa. 2018) ("fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million")); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 315 (E.D. Pa. 2012) ("Within the Third Circuit, courts have approved attorneys' fees ranging from 19 percent to 45 percent of the settlement fund as reasonable.").

Proposed Class Counsel also intend to seek reimbursement of all reasonably incurred litigation expenses. Any approved Fee Award and Litigation Expenses will be paid out of the

Settlement Fund. SA ¶ 9.1. The Settlement is not conditioned upon the Court's award of any attorneys' fees or expenses. *Id.* ¶ 9.3. Plaintiffs' will file a motion for a Fee Award and Costs (and Service Awards) no later than 14 days prior to the Objection Deadline. *Id.* ¶ 9.1.

## IV.    ARGUMENT

Federal Rule of Civil Procedure 23(e), as amended in 2018, "explicitly discusses the requirements for class settlements." *Hall v. Accolade, Inc.*, No. 17-cv-03423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019) (Pratter, J.). First, the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." FED. R. CIV. P. 23(e)(1)(A). The court then decides whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B).

In conducting their preliminary review, courts are cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).

At this "preliminary approval" stage, a district court may provisionally certify a class, "leaving the final certification decision for the subsequent fairness hearing." *Hall,* 2019 WL 3996621, at *2. The decision to approve a settlement is ultimately "'left to the sound discretion of the district court.'" *See In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,* No. 13-md-2445, 2023 WL 8437034, at *5 (E.D. Pa. Dec. 4, 2023) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

If the district court determines that it will "likely be able to" approve the Settlement and certify the Settlement Class, it should direct notice in a "reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1)(B); *see Fulton-Green v. Accolade,*

*Inc.*, No. 18-cv-00274, 2019 WL 316722, at *1, *5 (E.D. Pa. Jan. 23, 2019) (Pratter, J.) (granting motion for preliminary approval of data breach settlement "because it is within the range of possible approval, the requirements of conditional class certification are met, and the notice plan is reasonably designed to notify class members of the settlement agreement").

A.    **The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) and *Girsh* Factors for Preliminary Approval.**

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. The factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2).

In determining whether preliminary approval is warranted, the Court should consider whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. New York Life Ins. Co.*, 246 F.R.D 467, 472 (E.D. Pa. 2007) (citations omitted). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy and reasonableness—will be satisfied. *Id.*

The Settlement here, as explained below, exceeds the preliminary approval threshold. Plaintiffs, without opposition from Defendant, respectfully request that this Court preliminarily approve the proposed Settlement.

### 1. The Proposal Was Negotiated at Arm's Length.

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this litigation, assisted by a neutral and highly experienced mediator. Counsel Decl., ¶ 10. Whether a settlement arises from arm's-length negotiations is a key factor in assessing preliminary approval. *In re Nat'l Football League Players' Concussion Injury Litig*., 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included "two full days of mediation").

Here, the Parties participated in settlement discussions mediated by Bennett G. Picker. Counsel Decl. ¶¶ 8-11. Interim Co-Lead Counsel who negotiated the Settlement are experienced and respected class action litigators with significant experience in data breach cases. *Id.*, ¶ 10. The Parties thereafter spent significant amounts of time revising drafts and negotiating details of the final written Settlement Agreement, as well as conducting further confirmatory discovery. Counsel Decl. ¶¶ 13-14. At all times, these negotiations were at arm's length and, while courteous and professional, were intense and hard-fought on all sides. *Id.*, ¶ 10.

### 2. The Relief Provided for the Class Is Adequate.

This case and the proposed Settlement are the product of significant investigation of

Plaintiffs' and Class Members' claims.[2] Interim Co-Lead Counsel conducted extensive and lengthy interviews of Plaintiffs and other class members, reviewed the Plaintiffs' documentation and all documents that Onix produced regarding the Data Security Incident, and analyzed the applicable laws of Pennsylvania and other jurisdictions regarding breaches of customers' personally identifiable information ("PII"). Counsel Decl. ¶ 14.

The Parties exchanged informal discovery prior to the mediation, as well as detailed mediation statements. Counsel Decl. ¶ 9. Plaintiffs' counsel analyzed the documents in advance of the mediation. *Id.* Plaintiffs' submission of a mediation statement and class counsel's preparation for that proceeding and analysis of Onix's mediation statement further informed Plaintiffs' assessment of the relative strengths and weaknesses of their claims. *Id*.

Moreover, at the mediation Interim Co-Lead Counsel proffered additional information regarding specific damages incurred by Plaintiffs, and Defendant's counsel provided additional details and facts surrounding the Data Security Incident, events leading up to the Data Security Incident. Counsel Decl. ¶ 14. Defendant's counsel further provided information indicating a substantial portion of the Class was deceased and then argued many of those class members do not have standing to bring claims in the litigation.  Id. Based on this information, Class Counsel's independent investigation of the relevant facts and applicable law, and counsels' broad experience

---

[2] The fact that the Parties have not engaged in *formal* discovery is not determinative. At an early stage, the Parties disclosed to the Court their intention to mediate after engaging in targeted informal discovery, which the Court approved. *See* Case Mgmt. Ord. No. 2 (June 15, 2020) (Dkt. 119). That is consistent with a long line of cases in which courts—including this Court—have preliminarily approved class action settlements in the early stages of litigation, especially where meaningful informal discovery has occurred. *See In re Processed Egg Prods. Antitrust Litig*., 284 F.R.D. 249, 267 (E.D. Pa. 2012) (Pratter, J.) (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement"); *see also Fulton-Green,* 2019 WL 316722, at *3 (preliminarily approving class action settlement where "[e]ven though formal discovery has not started . . . the parties exchanged a substantial amount of information regarding the discrete issues in this case").

with other data breach cases, Class Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Counsel Decl. ¶ 42.

        **a.**        **The Settlement accounts for the costs, risks, and delay of trial and appeal.**

The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. Interim Co-Lead Counsel thoroughly assessed those contingencies in considering the terms of the Settlement. Counsel Decl. ¶ 43.

If the litigation were to continue, Plaintiffs and the Settlement Class would face a number of delays and challenges, including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining certification through trial. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

Also, a comparison with consumer class plaintiffs' monetary recoveries in other data breach settlements demonstrates the strength of this Settlement.[3] Moreover, the Settlement also includes

---

[3] *See, e.g., Adkins v. Facebook, Inc.*, No. 18-cv-05982, 2020 WL 6710086, at *2-3 (N.D. Cal. Nov. 15, 2020) (preliminarily approving data breach settlement providing only injunctive relief); *Linnins v. Haeco Americas, Inc. (f/k/a Timco Aviation Services, Inc.*), No. 16-cv-00486, 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was allegedly disclosed in breach); Final Approval Order and Judgment, *Brady v. Due North Holdings, LLC*, No. 17-cv-01313, at 2 (Dkt. 65) (S.D. Ind. Oct. 16, 2018) (settlement provided extension of identity theft protection services and reimbursement of out-of-pocket expenses of up to $150, $250, $350, or $500 depending on settlement tier); Final Approval Order, *In re Zappos Sec. Breach Litig.*, No. 12-cv-00325, at p. 2 (Dkt. 418) (D. Nev. Dec. 23, 2019) (settlement provided "10% coupon" for Zappos goods); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, No. 11-md-02258 (Dkt. 211) (S.D. Cal. May 4, 2015) (settlement involved breach of payment card information and other PII; settlement provided reimbursement of identity theft losses with $1 million aggregate cap and choice of one or two items from a mix of Sony games, online display themes, or a 3-month

significant injunctive relief for the Class. As discussed *supra*, the Settlement requires Onix to implement enhanced data security measures. These provisions provide a significant benefit to Class Members.

        **b.     The settlement provides for an effective method of distributing relief to the class, including through a simplified claims process.**

The Settlement creates a straight-forward procedure for Class Members to make a claim. It also provides for effective notice to Class Members using direct mailing. Counsel Decl. ¶ 22; S.A. ¶ 6.3. This factor supports the fairness of the settlement. *See In re Canon U.S.A. Data Breach Litig.*, No. 20-cv-6239, 2023 WL 7936207, at *4 (E.D.N.Y. Nov. 15, 2023) (granting preliminary approval to data breach settlement under which class members could claim ordinary losses, extraordinary losses, and credit monitoring).

        **c.     The proposed attorneys' fee award is reasonable.**

Interim Co-Lead Counsel have devoted significant time and financial resources to the litigation despite the uncertainty of prevailing as to class certification and the merits and establishing damages. Interim Co-Lead Counsel did not broach the topic of attorneys' fees until after agreeing on substantive settlement terms with Onix. Counsel Decl. ¶ 40. Plaintiffs will seek attorneys' fees not greater than 33.3% of the Settlement Fund, subject to Court approval and to be paid from the Settlement Fund. *Id*. As noted above, this amount has been found reasonable by this Court.[4]

---

subscription to the Sony PlayStation service).

[4] *McIntyre v. RealPage, Inc.,* No. 18-cv-03934, 2023 WL 2643201, at *3, n.5 (E.D. Pa. Mar. 24, 2023) (finding a fee request of 1/3 of a fund to be "'squarely within the range of awards found to be reasonable by the courts.'") (quoting *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 18-cv-1370, 2020 WL 3481458, at *19 (W.D. Pa. June 26, 2020)); *Ahrendsen v. Prudent Fiduciary Servs., LLC*, No. 21-cv-2157, 2023 WL 4139151, at *5 (E.D. Pa. June 22, 2023) ("class counsel reasonably seeks one-third of the settlement fund…for attorneys' fees"); *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.,* No. 17-cv-341, 2022 WL 16533571, at *8 (E.D. Pa. Oct. 28, 2022) ("The fees requested constitute one third of the Settlement fund, which is within a reasonable range given

Plaintiffs will file a fulsome motion and supporting materials supporting the fee request in advance of the objection deadline and will post them on the Settlement Website so that they can be easily accessed by Class Members. Counsel Decl. ¶ 41.

> ### d. There are no additional agreements required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C)(iv) requires courts to consider any agreement among the parties outside of the settlement agreement. "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). No such agreement exists in this case. Counsel Decl. ¶ 44.

> ### 3. The Settlement Treats Class Members Equitably Relative to Each Other.

Finally, as discussed *supra,* the Settlement treats all Class Members equitably and provides Class Members with the same convenient means to recover under the Settlement. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). The Settlement's three-tiered categories of relief (of which all Class Members may choose one) and the injunctive relief benefiting all Class Members satisfy this standard.

Moreover, the Settlement treats all Class Members fairly and equally in relation to the strengths of their claims. For purposes of setting recovery amounts, the Settlement fairly protects the interests of all parties by providing cash compensation, up to $5,000 to Class Members who suffered documented out-of-pocket losses, and allows Class Members who have not yet suffered

---

both lead counsel's efforts in a challenging action made more complex by certain adverse facts and a comparison with fee awards in other Third Circuit class action settlements.") (citations omitted)

out-of-pocket losses the opportunity to protect themselves from future fraud by making a claim for credit monitoring. These options will be available to all Settlement Class Members. The Settlement also provides valuable injunctive relief to the entire Class. This will likewise benefit all Class Members. In sum, the Settlement ensures the Class Members will be treated equitably relative to each other. It should be approved as fair, reasonable, and adequate.

### 4.    The Settlement Satisfies all of the Applicable *Girsh* Factors.

In addition to the foregoing criteria under Rule 23(e), the Third Circuit has identified a set of factors that should be considered in assessing the fairness of a settlement. *See In re Suboxone,* 2023 WL 8437034, at *4–6. The so-called *Girsh* factors, from the first of these three cases, are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at *5 (quoting *Girsh,* 521 F.2d at 157).

To the extent applicable (and not already addressed above), Plaintiffs have satisfied the *Girsh* test. Had the case not resolved, the parties here would be facing "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023). Numerous courts have recognized the risks associated with data breach class actions. *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage.") (internal citations omitted). And even if Onix theoretically may have had the ability to pay for a larger settlement, "courts within the Third Circuit 'regularly find a

settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" *Kelly, v. Santander Consumer USA, Inc.,* No. 20-cv-3698, 2023 WL 8701298, at *4 (E.D. Pa. Dec. 15, 2023) (quoting *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013)).

**B.       The Proposed Settlement Class Satisfies the Criteria of Rule 23(a)**

"In addition to reviewing the terms of settlement, a court at the preliminary approval stage may conditionally certify the class for purposes of providing notice, with the final certification decision to be made at the subsequent fairness hearing." *Checchia v. Bank of Am., N.A.,* No. 21-cv-3585, 2023 WL 2051147, at *2 (E.D. Pa. Feb. 16, 2023) (citing *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 199-200 (E.D. Pa. 2014)). Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997); *Fulton-Green*, 2019 WL 316722, at *2. The Settlement Class meets the applicable criteria for conditional certification.

**1.       The Class Is Sufficiently Numerous.**

The Settlement Class contains approximately 308,942 Settlement Class Members. Counsel Decl. ¶ 15. Thus, the Class easily satisfies the Rule 23(a)(1) requirement that the class be "so numerous that joinder of all members is impracticable." *See Fulton-Green*, 2019 WL 316722, at *3 (proposed class of 973 people "easily meet[s] the numerosity requirement").

**2.       There Are Questions of Law or Fact Common to the Class.**

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527-28 (3d Cir. 2004) . The commonality threshold is low and does not require an "identity of claims or facts among class members." *Gates*, 248 F.R.D. at 440. "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alterations omitted).

18

Here, the facts relating to Data Breach are the key issues in the case. There are multiple common questions, including how the data breach occurred, whether Defendant had a duty to protect Settlement Class Members Private Information and whether Settlement Class Members were harmed by the alleged breach. As Judge Pratter recently observed in finding this requirement satisfied in another data breach settlement, "each of the class members would have to prove by a preponderance of the evidence that Wawa owed a duty to each [class member] to protect its credit card data. They would all have to show that Wawa's specific negligent acts or omissions caused the data breach to occur and whether proximate cause existed." *In re Wawa,* 2023 WL 6690705, at *4. These common issues are present in this case too.

### 3. The Class Representatives' Claims Are Typical of the Claims of the Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Hall*, 2019 WL 3996621, at *7. Typicality is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (hereinafter "*NFL Players II*") (internal citation omitted). Here, the claims of the Class Representatives are "not only similar to those of other class members but are virtually identical." *Fulton-Green*, 2019 WL 316722, at *4. They all "stem[] from [defendant's] data security measures and whether they were adequate to protect [the sensitive, compromised data]." *In re Wawa,* 2023 WL 6690705, at *4. Typicality is, therefore, satisfied.

4.    **The Class Representatives and Co-Lead Counsel Will Fairly and Adequately Represent the Class.**

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class."

> Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*, 296 F.R.D. 351, 361 (E.D. Pa. 2013) (Pratter, J.) (citations and internal quotation marks omitted).

Here, the named Plaintiffs have been actively involved in the litigation of this case, and have assisted throughout the process, answering Counsel's many questions, providing documents pertaining to the Lawsuit when requested, and reviewing the complaint and terms of the Settlement. Counsel Decl. ¶¶ 33, 35. Their interests and those of the other Class Members are aligned: all are equally interested in proving the factual averments in the Complaint, establishing Defendant's liability, and obtaining compensation from Defendant. As described below, the Class Representatives have retained knowledgeable and well-qualified counsel who have successfully prosecuted many class actions, including many actions arising from data breaches. Interim Co-Lead Counsel have vigorously prosecuted the action since even before their appointment, and have devoted substantial effort and resources on behalf of the Class. *Id.* ¶ 37.

5.    **Common Issues Predominate over any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy.**

In addition to satisfying the criteria under Rule 23(a), the proposed Settlement Class must meet one of the criteria under Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets both requirements.

### a.    Common issues predominate.

"Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if common questions of law or fact predominate questions arguably affecting only individuals." *Fulton-Green v. Accolade, Inc.*, No. 18-cv-0274, 2019 WL 4677954, at *6 (E.D. Pa. Sept. 23, 2019). "When examining whether certain issues predominate, a court looks to see if "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2021 WL 3276148, at *4 (E.D. Pa. July 30, 2021) (citation omitted).

As Judge Pratter recently found in granting preliminary approval to a data breach settlement, "there is a myriad of questions of law and fact that predominate.*" In re Wawa.,* 2021 WL 3276148, at *4. Those included whether the defendant owed a duty to class members to safeguard their sensitive information; whether the defendant breached that duty; whether the defendant violated state consumer protection laws; whether the defendant complied with industry standards; whether the defendant's conduct or failure to act was the proximate cause of the breach; and whether plaintiffs and the class members are entitled to recovery. *See id.* These same issues, all of which are focused on Onix's common course of conduct, likewise predominate here.

### b.    A class action is superior to other means of adjudication.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Processed Egg Prods.*, 284 F.R.D. at 264. Rule 23(b)(4) suggests that courts consider the following

non-exhaustive list of factors when making a superiority determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Here, all four considerations weigh in favor of certifying the Settlement Class. There is no indication that Class Members would be interested in litigating individually or that the litigation should proceed in a non-class forum. In addition, the cost and complexity of litigation would preclude the vast majority of Class Members from filing suit individually.[5] The class action Settlement, in contrast, provides Class Members with an immediate monetary benefit and the benefit of improved data security measure by Onix, who is still in possession of their information. As this Court summarized in another data breach case:

> [A]ll of the claims are almost identical because they arise from the same underlying activity and the damages should be easily provable and quantifiable. Furthermore, the value of the individual claims may be modest and thus impractical to litigate on a case by case basis. This is particularly true for people . . . who have not suffered identity theft but have had to spend time notifying institutions and signing up for identity theft protection programs.

*Fulton-Green*, 2019 WL 316722, at *4 (preliminarily certifying Rule 23(b)(3) class).

### C.    The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances.

Pursuant to Rule 23(c)(2)(B), the notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

---

[5] Because the Parties request certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . [because] the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord Sullivan*, 667 F.3d at 322 n.56; *Processed Egg Prods.*, 284 F.R.D. at 264.

reasonable effort." There are three aspects to notice requirements under Rule 23 and fundamental due process: (1) notice must be disseminated in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; (2) the content must be of "such nature as reasonably to convey the required information"; and (3) the notice must "afford a reasonable time for those interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted). The Notice Program achieves all of these objectives.

### 1.    Notice Will Reach Significant Numbers of Class Members.

The Short Notice shall be provided to Settlement Class Members directly via U.S. mail to the postal address provided by Onix on the Settlement Class List. SA ¶ 6.3, 6.4, Ex. B. In addition to direct mailing, the Settlement Administrator will establish and maintain a Settlement Website through which Settlement Class Members can receive additional information about the Settlement. SA ¶ 6.7. The Administrator will also make available a toll-free help line to provide Settlement Class Members with additional information about the settlement and to respond to Settlement Class Members' questions. *Id.* Similarly direct notice programs have reached well in excess of 90 percent of Class Members, and the same outcome is anticipated here.

### 2.    The detailed notice form and settlement website clearly and concisely inform Class Members about their rights and options, including how to file a claim.

As required by Rule 23(c)(2)(B), the proposed Long Form notice attached as Ex. C to the Settlement Agreement "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the

time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." It also describes the terms of the Settlement, including requests for service awards for the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval hearing and the procedures for appearing at the hearing; and provides contact information for Co-Lead Counsel and the Settlement Administrator. Counsel Decl. ¶ 23.

The Notice Program will inform Class Members of the deadlines for objecting to the settlement and excluding themselves from the Class. The deadlines themselves are reasonable. See Nat'l Football League, 301 F.R.D. at 203 ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves.").

In sum, the Notice Program warrants approval: it satisfies Rule 23(c), it is reasonable, is designed to reach Class Members efficiently, provides the information and time that Class Members need to protect their rights, and is the best notice practicable under the circumstances.

## V.    INTERIM CO-LEAD COUNSEL SHOULD BE PROVISIONALLY APPOINTED AS CLASS COUNSEL

Plaintiffs request that the Court appoint the current Interim Co-Lead Counsel team as Class Counsel for the Settlement Class. Interim Co-Lead Counsel have vigorously represented the interests of Plaintiffs and Class Members at all times since their appointment. The Court previously held that Class Counsel met the Fed. R. Civ. P. 23(g)(1)(A) criteria for purposes of Interim Co-Lead Counsel appointments. (Dkt. 14.). For the same reasons, Attorneys Klinger and Johns should be appointed Class Counsel.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs and Interim Co-Lead Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) provisionally certify for settlement purposes only the proposed Settlement Class, pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure; (3) approve the proposed Notice Program; (4) approve, set deadlines for, and order the opt out and objection procedures set forth in the Settlement Agreement; (5) appoint Plaintiffs as Class Representatives; (6) appoint as Class Counsel Benjamin F. Johns of Shub & Johns LLC and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman; and (7) schedule a Fairness Hearing in accordance with the proposed schedule set forth above. A proposed Preliminary Approval Order is being filed herewith.

Dated: February 20, 2024                    Respectfully submitted,

By:    *s/ Benjamin F. Johns*
Benjamin F. Johns (PA Bar 201373)
Samantha E. Holbrook (PA Bar 311829)
Andrea L. Bonner (PA Bar 332945)
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
Fax: (856) 210-9088
bjohnes@shublawyers.com
sholbrook@shublawyers.com
abonner@shublawyers.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Co-Lead Counsel for Plaintiffs*

Bryan L. Bleichner*
Phillip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste 1700
Telephone: 612-767-3602
Fax: 612-336-2940
bbleicherner@chestnutcambronne.com
pkrzeski@chestnutcambrone.com

Nicholas Sandercock
**SIRI & GLIMSTAD LLP**
745 5th Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
nsandercock@sirillp.com

Gary E. Mason*
Danielle Perry*
Lisa A. White*
**MASON LLP**
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
Tel: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
lwhite@masonllp.com

James M. Evangelista*
**EVANGELISTA WORLEY LLC**
500 Sugar Mill Road Suite 245A
Atlanta, GA 30350
Tel.: 404-205-8400
Fax: 404-205-8395
Email: jim@ewlawllc.com

Jennifer Czeisler*
**JKC LAW, LLC**
269 Altessa Blvd. Melville, NY 11747
Tel: (516)457-9571
Email: jennifer@jkclawllc.com

James A. Francis
John Soumilas
Lauren KW Brennan

Jordan M. Sartell*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com
jsartell@consumerlawfirm.com

David S. Almeida*
Elena A. Belov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (312) 576-3024
david@almeidalawgroup.com
elena@almeidalawgroup.com

*Attorneys for Plaintiffs and the
Proposed Class*

*\*pro hac vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February 2024, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list.


*/s/ Benjamin F. Johns*
Benjamin F. Johns