# **EXHIBIT 2**

**JOINT DECLERATION OF BENJAMIN F.
JOHNS AND GARY M. KLINGER**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

.

| | |
|---|---|
| **IN RE: ONIX GROUP, LLC DATA BREACH LITIGATION** | **Case No. 23-2288-KSM** |

**JOINT DECLARATION OF BENJAMIN F. JOHNS AND GARY M. KLINGER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

We, Benjamin F. Johns and Gary M. Klinger, hereby declares as follows:

1.      Benjamin F. Johns ("Johns"), a partner at Shub & Johns and Gary M. Klinger ("Klinger"), a partner at Milberg Coleman Bryson Phillips Grossman LLC are co-counsel for Plaintiffs in this action.

2.      This Declaration is submitted in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement filed contemporaneously herewith. We make the following declaration based upon personal knowledge and, where indicated as based on information and belief, that the following statements are true. submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan. The executed Settlement Agreement ("SA") is attached to the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement as **Exhibit 1** and is dated **February 20, 2024**. If called upon as witnesses, we could and would competently testify as follows:

### Summary of the Litigation

3.      This case arises from a data incident (the "Data Incident") experienced by Onix Group, LLC ("Onix") which took place from March 20-27, 2023 that involved the potential unauthorized access of Personally Identifiable Information ("PII").

4.      Beginning in June, 2023, numerous class actions were filed in this district and elsewhere on behalf of consumers whose information was stolen by cybercriminals as part of a cyberattack against Onix. On July 19, 2023, Judge Karen Spencer Martson entered an order consolidating the cases relating to the Data Incident. (Dkt. 14.) In this order, the Court appointed the following Bejamin F. Johns, Esq. of Shub & Johns LLC and Gary M. Klinger, Esq. of Milberg Coleman Bryson Phillips Grossman as Interim Co-Lead Counsel for Eric Meyers, Donald Owens,

Aida Albino Wimbush, Ashtyn Mark, Leah Simione, Melissa Lyston, and Angela Haynie ("Plaintiffs") and all other potential Class Members.

5.      Thereafter, on September 15, 2023, the Plaintiffs filed a Consolidated Amended Complaint ("CAC"), on behalf of themselves and on behalf of all others similarly situated, ECF No. 18. Asserting legal claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, and violations of state consumer protection and data privacy statutes, the Complaint alleged, among other things, that despite the foreseeability of a data breach, Onix failed to implement adequate measures to protect the sensitive information entrusted to it by its customers. The Complaint also alleged that many Class Members have spent time responding to the security incident, may have spent money for protective measures, and were at an increased risk of future misuse of their information. The Complaint sought to remedy those harms through, among other things, reimbursement of out-of-pocket losses and compensation for time spent in response to the Data Security Incident, as well as injunctive relief entailing substantial improvements to Defendant's data security systems.

6.      Throughout this time, the Parties discussed the possibility of exploring an early resolution via mediation. On December 1, 2023, the Parties filed a joint motion to stay the proceedings following their November 20, 2023 mediation with Bennett G. Picker of Stradley Rono Stevens & Young, LLP.

7.      The Court issued an order granting the Parties until January 18, 2023 to file Plaintiffs' Motion for Preliminary Approval. Over the past two months, the Parties have worked to finalize the finer points of the Settlement.

### The Mediation and Settlement Negotiations

8.      On November 20, 2023, the Parties took part in a mediation before Bennett G.

Picker, Esq. of Stradley Ronon, a well-regarded Philadelphia law firm. Mr. Picker is one of the foremost mediators of data breach cases in the country, with an unparalleled track record of successful mediations leading to court-approved settlements.

9.      In anticipation of the mediation, Plaintiffs served Onix with several requests for documents and information relevant to the Data Breach. Onix provided Plaintiffs' counsel with written responses on or around November 14, 2023. Plaintiffs' counsel analyzed the documents in advance of the mediation. The parties also exchanged mediation statements. Plaintiffs' submission of a mediation statement and class counsel's preparation for that proceeding and analysis of Onix's mediation statement further informed Plaintiffs' assessment of the relative strengths and weaknesses of their claims.

10.      Throughout the mediation, we zealously advanced the Plaintiffs' and Class Members' positions. We were fully prepared to proceed with the litigation rather than accept a settlement that was not in the best interests of the Class. At all times, the negotiations were at arm's length and, while courteous and professional, were intense and hard-fought on all sides.

11.      The November 20, 2023 mediation was productive but it did not result in the resolution of this case. Instead, the day concluded with Mr. Picker making to both sides a double-blind mediator's proposal.

12.      Over the course of the following days, both Parties accepted the mediator's proposal.

13.      The Parties agreed to resolve all claims asserted in the Consolidated Amended Complaint. The Parties thereafter spent significant amounts of time revising drafts and negotiating details of the final written Settlement Agreement that is now presented to the Court for approval, as well as conducting further confirmatory discovery.

3

14.     These cases and the proposed Settlement are the product of significant investigation of Plaintiffs' and Class Members' claims.  Interim Co-Lead Counsel conducted extensive and lengthy interviews of Plaintiffs and other class members, reviewed the Plaintiffs' documentation and all documents that Onix produced regarding the Data Security Incident, and analyzed the applicable laws of Pennsylvania and other jurisdictions regarding breaches of customers' personally identifiable information ("PII").  Moreover, at the mediation Interim Co-Lead Counsel proffered additional information regarding specific damages incurred by Plaintiffs, and Defendant's counsel provided additional details and facts surrounding the Data Security Incident, events leading up to the Data Security Incident. Defendant's counsel further provided information indicating a substantial portion of the Class (approximately 21%) was deceased and then argued many of those class members do not have standing to bring claims in the litigation.

**The Settlement**

15.     The Proposed Settlement Class is defined as:

All 308,942 natural persons whose Private Information was compromised in the Data Breach and who have not been confirmed to be deceased. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Onix, its subsidiaries, parent companies, successors, predecessors, and any entity in which Onix or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

S.A. ¶ 1.42.  The Settlement Class contains approximately 308,942 Settlement Class Members.

16.     In exchange for the Settlement Benefits provided for under the Settlement Agreement, Class Members will release any and all claims against Onix and its Released Parties as set forth in the Settlement Agreement.

17.     In addition to the credit monitoring service and other non-monetary benefits

provided by this Settlement, the monetary settlement here results in a payment of approximately $1,250,000 non-reversionary Settlement Fund (id. ¶ 1.43) that will be used to pay for Administrative Expenses, taxes, any Service Awards, and any Fee Award and Costs (id. ¶ 3.8). The remaining amount, i.e., the Net Settlement Fund, will be used to pay for Approved Claims submitted by Class Members for Settlement Benefits.

18.    Class Members may submit a Documented Loss Payment claim seeking up to $5,000 per person for the reimbursement of Documented Losses with Reasonable Documentation. *See* SA ¶¶ 1.15, 3.3(a).

19.    The Settlement provides Settlement Class Members to submit a claim for up to $5,000 for reimbursement of documented losses, one year of three bureau credit monitoring services, including $1 million in identity theft insurance, or a Cash Fund Payment. S.A. ¶ 3.3. The Settlement also provides for significant injunctive relief aimed at strengthening Onix's data security measures.

20.    In addition, the Parties also have agreed as part of the Settlement that for a period of two years from the Effective Date, Onix will adopt, continue, and/or implement certain data security and privacy improvements designed to protect against similar data security incident in the future. *See id*. ¶¶ 2.1.

21.    Class Members may submit a claim for a pro rata cash payment without any supporting documentation. *Id*. ¶ 3.3(c). The amount of money each Class Member who submits an Approved Claim will receive will be calculated as follows:

> The Settlement Fund shall be used to make payments for the following: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) the costs of providing the CMIS; (iv) Approved Claims for Documented Loss Payments (up to $5,000 per claim); and (v) Approved Claims for Cash Fund Payments. The value of the Cash Fund Payments will be calculated by subtracting from the Settlement Fund the expenses listed as (i) to (iv) in the

preceding sentence (i.e., the Net Settlement Fund). The Net Settlement Fund shall then be divided evenly by the total number of valid claims submitted by Class Members.

### Notice Plan and Settlement Administration

22.    The Parties have selected Angeion Group. ("Angeion") to be the Settlement Claims Administrator through a competitive bidding process. The Angeion Group is a nationally recognized claims administrator that has handled dozens of similar data breach settlements across the country. All costs of the notice and settlement administrator will be deducted from the Settlement Fund. The Notice Plan provides for individual Notice to Class Members by the Settlement Administrator by direct mail – the same way Class Members were initially notified of the Data Breach.

23.    The Long Form Notice describes the terms of the Settlement, including requests for service awards for the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval hearing and the procedures for appearing at the hearing; and provides contact information for Co-Lead Counsel and the Settlement Administrator.

24.    The Settlement Administrator will also establish a dedicated Settlement Website that will inform Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines, and related information.

25.    The Settlement Website shall include relevant documents, including the following: (i) the Long Notice; (ii) the Claim Form, which will be available to download or submit electronically; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; (v) the operative Class Action Complaint, filed in the Action before this Court; (vi) the motion for a Fee Award and Costs and Service Awards after it is filed; and (vii) any other materials agreed upon by

6

the Parties and/or required by the Court. Class Members will be able to submit Claim Forms and Requests for Exclusion through the Settlement Website.

26.     The Settlement Administrator will also create a toll-free help line so Class Members can obtain additional Settlement information.

27.     Class Members will have until ninety (90) days after the notice is issued to complete and submit their Claim Form to the Settlement Administrator, either by mail or online. SA ¶ 3.5. The Claim Form is written in plain language to facilitate Class Members' ease in completing it.

28.     The Settlement Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. SA ¶ 3.6. Should a claim be incomplete or defective, the Settlement Administrator shall request additional information and give the claimant thirty (30) days to cure the defect. Should a claim be incomplete or defective, the Settlement Administrator shall request additional information and give the claimant thirty (30) days to cure the defect.

29.     When a Class Member files a claim for a Documented Loss that is rejected, and the Class Member fails to cure that claim, the claim instead will be considered as a claim for a Cash Fund Payment.

30.     Class Members will have sixty (60) days from the Notice Date to object to or to submit a request for exclusion from the Settlement. In order for a Class Members submit a Request for Exclusion to the Settlement, he or she must strictly comply with the requirements of the Settlement Agreement. *See* SA ¶ 6.8.

31.     Any Class Member who wishes to object shall submit a timely written notice of his or her objection by the Objection Deadline, which like the Opt-Out Period, is sixty (60) days following the Notice Date. SA ¶¶ 1.30, 6.9.

32.     To the extent any monies remain in the Net Settlement Fund more than 120 days

after the distribution of Settlement Payments, a subsequent Settlement Payment will be evenly made to all Class Members with Approved Claims for Cash Fund Payments who cashed or deposited the initial payment they received, assuming such payment is over $3.00. *Id.* ¶ 3.10. Should any remaining amount of the Net Settlement Fund be economically not distributable, the Parties shall petition the Court for permission to distribute the remaining funds to an approved non-profit recipient, providing the Court with details of the proposed non-profit recipient.

### Proposed Class Representative Service Awards and Attorneys' Fees

33.    Plaintiffs have been dedicated and active participants on behalf of the class they seek to represent. Plaintiffs actively assisted Plaintiffs' Counsel with their investigation. Plaintiffs sat through multiple interviews and provided supporting documentation and personal information throughout the process. Plaintiffs reviewed the complaints and the terms of the Settlement and communicated with their counsel regarding the Settlement.

34.    Plaintiffs put their names and reputations on the line for the sake of the Class, and the recovery would not have been possible without their efforts.

35.    Plaintiffs' Counsel kept in close contact with Plaintiffs during the litigation through numerous emails and personal telephone calls. Plaintiffs here have been vital in litigating this matter, have been personally involved in the case, and support the Settlement.

36.    Settlement Class Counsel will request up to a $1,000 service award to each Named Plaintiff in recognition of the time, effort, and expense they incurred in pursuing claims benefiting the Settlement Class.

37.    Plaintiffs' counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, including: obtaining, reviewing and analyzing Plaintiffs' detailed personal records; analyzing Onix's records, privacy policies, and any remedial steps; analyzing the scope and number of persons impacted by the Data

8

Breach; analyzing Onix's financial condition; participating in mediation; and, ultimately, negotiating a settlement that provides meaningful relief for the Settlement Class, despite the substantial litigation risks that were present.

38.    Plaintiffs collectively request that the Court appoint Johns and Klinger as Settlement Class Counsel. A copy of Shub & Johns LLC and Milberg Coleman Bryson Phillips Grossman PLLC's firm resumes are attached to this Declaration as **Exhibit A and B**, respectively.

39.    The Plaintiffs are also represented in this matter by numerous other attorneys and law firms with a vast amount of class action and data breach litigation experience.

40.    As part of the Settlement, Plaintiffs will separately file a motion for an award of attorneys' fees and reimbursement of litigation costs and expenses. *Id*. ¶ 9.1. Plaintiffs' counsel intends to request up to 33.3% of the Settlement Fund (*i.e.*, $416,666), consistent with attorneys' fee awards and percentage for such awards under Pennsylvania and Third Circuit law. Interim Co-Lead Counsel did not broach the topic of attorneys' fees until after agreeing on substantive settlement terms with Onix.

41.    Any approved Fee Award and Costs will be paid out of the Settlement Fund. SA ¶ 9.1. The Settlement is not conditioned upon the Court's award of any attorneys' fees or expenses. *Id*. ¶ 9.3. Plaintiffs' will file a motion for a Fee Award and Costs (and Service Awards) no later than 14 days prior to the Objection Deadline, and will post the same on the Settlement Website so that the motion may be easily accessed by Class Members. *Id*. ¶ 9.1.

42.    The Plaintiffs and all Plaintiffs' Counsel recommend, for the Court's consideration, preliminary approval of the Settlement because it is well within the range of possible approval, represents a fair, reasonable, and adequate settlement, and is in the best interests of the Settlement Class. This recommendation is based upon the information reviewed and gathered in the lead up

to and at the mediation, Class Counsel's independent investigation of the relevant facts and applicable law, and counsels' broad experience with other data breach cases.

43.    The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. Interim Co-Lead Counsel thoroughly assessed those contingencies in considering the terms of the Settlement.

44.    There is no side agreement among the Parties outside of the Settlement Agreement.

45.    A proposed order granting the relief requested in Plaintiffs' Motion is attached **to the** Settlement Agreement as Exhibit D and is also submitted as an attachment to the filed motion.

We declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct.

**Executed this 20th day of February, 2024**


_____/s/ Gary M. Klinger_____          _____/s/ Benjamin F. Johns_____
Gary M. Klinger                              Benjamin F. Johns (PA Bar No. 201373)
**MILBERG COLEMAN BRYSON**                   **SHUB & JOHNS LLC**
**PHILLIPS GROSSMAN PLLC**

# EXHIBIT A

## SHUB & JOHNS LLC'S FIRM RESUME



SHUB & JOHNS LLC

Four Tower Bridge
200 Barr Harbor Drive
Suite 400
Conshohocken, PA 19428

(610) 477-8380
SHUBLAWYERS.COM
INFO@SHUBLAWYERS.COM



## SHUB & JOHNS LLC

Four Tower Bridge
200 Barr Harbor Drive
Suite 400 - PMB 99452
Conshohocken, PA 19428

(610) 477-8380
JSHUB@SHUBLAWYERS.COM
BJOHNS@SHUBLAWYERS.COM
SHOLBROOK@SHUBLAWYERS.COM
ABONNER@SHUBLAWYERS.COM
DGOMEZ@SHUBLAWYERS.COM
LRUSSO@SHUBLAWYERS.COM



**Jonathan Shub** is a co-founder of Shub & Johns LLC. Mr. Shub graduated from American University (Washington, D.C.), B.A., in 1983 and Delaware Law School of Widener University (now Widener University Delaware School of Law), cum laude, in 1988. While enrolled in Delaware Law School of Widener University, he served as the Law Review Articles Editor. Jon was a Wolcott Fellow Law Clerk to the Hon. Joseph T. Walsh, Delaware Supreme Court in 1988. He is a member of the American Association of Justice (past chairman of class action litigation section), the American Bar Association and the Consumer Attorneys of California. Jon was named a Pennsylvania SuperLawyer from 2005-2009 and 2011-2019. Jon is also an active member of his local synagogue and an avid political fundraiser.

Jon is recognized as one of the nation's leading class action consumer rights lawyers, based on his extensive experience and successes representing classes of individuals and businesses in a vast array of matters involving unlawful conduct. Jon has gained notable attention in the area of defective consumer electronics and computer hardware as a result of many leadership positions in federal and state cases against companies such as Hewlett-Packard, Maytag, IBM and Palm. In

fact, Maximum PC Magazine, a leading industry publication, said years back that "Shub is becoming renowned for orchestrating suits that have simultaneously benefited consumers and exposed buggy hardware." He also has vast experience in mass tort class actions such as Vioxx, light tobacco litigation, and in consumer class actions such as energy deregulation. He is currently heavily involved in litigation on behalf of businesses that were denied insurance coverage involving COVID-19.

Jon launched his career in the Washington office of Fried, Frank, Harris, Shriver & Jacobson, where he worked on complex commercial matters including corporate investigations and securities litigation. He then moved into a practice of consumer protection and advocacy. Prior to joining Kohn, Swift & Graf, P.C., Jon was the resident partner in the Philadelphia office of Seeger Weiss LLP. He is a frequent lecturer on cutting edge class action issues, and is a past chairman of the Class Action Litigation Group of the American Association for Justice. Jon regularly appears in state and federal courts nationwide, and in many high profile consumer protection cases. Jon's leadership roles require him to develop the theories of liability for the entire class as well as the overall trial strategy for the cases. Most recently, Jon was co-lead and co-trial counsel in a case against municipality for violation of a state privacy law. The case was tried before U.S. District Judge Wendy Beetlestone, and resulted in a jury award of approximately $68,000,000 to the Class.

**Jon's experience in class action litigation includes the following leadership positions:**

- Serves as lead counsel in New York against KIWI Energy LLC for deceptive advertising of residential energy practices.
- Served as co-lead counsel in Illinois against Direct Energy for deceptive advertising ofresidential energy practices.
- Served as co-lead counsel in Pennsylvania against PG&E for deceptive advertising of residentialenergy practices.
- Served as co-lead counsel in settled national litigation against CPG International for deceptive advertising in connections with deceptive advertising of AZEK-branded decking products.
- Served as executive committee counsel in settled national litigation against Western Union fordeceptive practices in connection with money transfers.
- Served as co-lead counsel in litigation against Facebook for deceptive advertising practices.
- Served as co-lead counsel in a national class action against Palm involving defective smart phones.
- Served as co-lead counsel in a national class action against Nissan for defective tires on its 350Zmodel.
- Served as co-lead counsel in a national class action against Hewlett Packard claiming defects incertain printer models.
- Served as co-lead counsel in litigation against Vonage for consumer fraud.
- Served as co-lead counsel in litigation against Maytag, where he was instrumental in negotiating a $42.5 million nationwide settlement for a class of more than 200,000 Maytag customers.
- Served as co-lead counsel in a nationwide class settlement against IBM that affected more than 3million hard drive purchasers.

**Publications and Presentations:**
- Moderator, Class Actions, Annual Meeting of American Association of Justice, 2015, 2016
- Speaker, Class Actions, Annual Meeting of American Association of Justice, 2015, 2016
- Speaker, "Finding the Right Class Action", New Jersey Association of Justice, June, 2016
- Speaker, "Nuts and Bolts of MDL Practice", Class Action Symposium, Chicago, Illinois, June, 2016
- Speaker, Computer Technology and Consumer Products Class Actions", Consumer Attorneys of California 46th Annual Convention, November 2007
- Frequent speaker, American Association for Justice (formerly ATLA)
- Author, Distinguishing Individual from Derivative Claims in the Context of Battles for Corporate Control", 13 Del. J. Corp. L 579 (1998)
- Author, "Shareholder Rights Plans? Do They Render Shareholders Defenseless Against Their Own Management", 12 Del J. Corp, L. 991 (1997)
- Co-author, "Once Again, the Court Fails to Rein in RICO", Legal Times (April 27, 1992)
- Co-author, "Failed One-Share, One Vote Rule Let SEC Intrude in Boardroom", National LawJournal (October 8, 1990).



**Benjamin F. Johns**, a co-founding partner at Shub & Johns LLC, is a consumer protection advocate with nearly two decades of litigation experience. He is admitted to practice in all of the state and federal courts in Pennsylvania and New Jersey, and has personally argued in the Third Circuit, the D.C. Circuit, PA Supreme Court, and PA Commonwealth Court. Over the course of his career, Mr. Johns has taken and defended hundreds of depositions, argued and won dispositive motions (including contested motions for class certification), and been appointed to leadership positions by various courts across the country. He was recently described by the legal publication Law360 as being a "data breach specialist." He was the lead litigator at his prior firm in a case against Apple which resulted in a $50 million settlement and was the No. 1 ranked Consumer Fraud settlement in California for 2022 by TopVerdict.com.

Mr. Johns is currently serving as court appointed interim co-lead counsel in several consumer data breach class actions, including:
- *Nelson v. Connexin Software Inc. d/b/a Office Practicum,* No. 2:22-cv-04676-JDW (E.D. Pa.);
- *In re NCB Management Services, Inc. Data Breach Litig.,* No. 2:23-cv-1236-KNS (E.D. Pa.);
- *In re Onix Group, LLC Data Breach Litig.* No. 23-2288-KSM (E.D. Pa.);
- *In re CorrectCare Data Breach Litig.,* No. 5:22-319-DCR (E.D. Ky.);
- *In re Community Health Systems, Inc. Data Sec. Litig.,* No. 3:23-cv-00285 (M.D. Tenn.);
- *In re R&B Corporation of Virginia d/b/a Credit Control Corporation, Data Security Breach Litig.,* No. 4:23-CV-66 (E.D. Va.);

- *Salinas et al. v. Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Health System,* No. 20213-0090 D (La. J. D. Ct.);
- *In re Hope Coll. Data Sec. Breach Litig.,* No. 1:22-CV-01224-PLM (W.D. Mich.); and
- *Guarnaschelli et al. v. East River Medical Imaging, P.C., Index No. 656099/2023 (N.Y. Sup. Ct.)*

      Mr. Johns was elected by fellow members of the Philadelphia Bar Association to serve a three-year term on the Executive Committee of the organization's Young Lawyers Division. He also served on the Editorial Board of the Philadelphia Bar Reporter and the Board of Directors for the Dickinson School of Law Alumni Society. Mr. Johns has been published in the Philadelphia Lawyer magazine and the Philadelphia Bar Reporter. While in college, Mr. Johns was on the varsity basketball team and spent a semester studying abroad in Osaka, Japan. He graduated from Harriton High School in 1998 as the then all-time leading scorer in the history of the boys' basketball program. Ben has been named a "Lawyer on the Fast Track" by The Legal Intelligencer, a "Top 40 Under 40" attorney by The National Trial Lawyers, and a Pennsylvania "Rising Star"/"Super Lawyer."

Over the course of his career, Mr. Johns has provided substantial assistance in the prosecution of the following cases:

- *In re Macbook Keyboard Litig.,* No. 5:18-cv-02813-EJD (N.D. Cal.) (Mr. Johns took and defended numerous depositions and successfully argued two motions to dismiss and co-argued plaintiffs' motion for class certification in this widely-covered case against Apple which ultimately settled for a $50 million common fund. In granting final approval to the settlement, the district court wrote that plaintiffs' counsel "achieved excellent results for the class.")

- *Kostka v. Dickey's Barbecue Restaurants Inc*., No. 3:20-CV-03424-K (N.D. Tex.) (Mr. Johns served as co-lead counsel in this consumer data breach case which resulted in a $2.35 million common fund settlement).

- *Udeen v. Subaru of Am., Inc.,* No. 18-17334 (RBK/JS) (D.N.J.) (Mr. Johns was co-lead counsel in this consumer class action involving allegedly defective infotainment systems in certain Subaru automobiles, which resulted a settlement valued at $6.25 million. At the hearing granting final approval of the settlement, the district court commented that the plaintiffs' team "are very skilled and very efficient lawyers…They've done a nice job.")

- *Breneman v. Keystone Health,* Case No. 2023-618 (Pa. Ct. Com. Pl.) (Mr. Johns was co-lead counsel in this medical data breach class action which resulted in a $900,000 common fund settlement).

- *Hughes v. UGI Storage Co.,* 263 A.3d 1144 (Pa. 2021) (Mr. Johns argued this precedent-setting *de facto* takings matter before the Pennsylvania Supreme Court in October of 2021, in which he secured a 6-0 reversal of the underlying Commonwealth Court decision that had affirmed the trial court's dismissal of the case)

- *In re Nexus 6P Product Liability Litig.*, No. 5:17-cv-02185-BLF (N.D. Cal.) (Mr. Johns served as co-lead counsel – and argued two of the motions to dismiss – in this defective smartphone class action.  The case resulted in a settlement valued at $9.75 million, which Judge Beth Labson Freeman described as "substantial" and an "excellent resolution of the case.")

- *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal.) (Mr. Johns served as court-appointed co-lead counsel in this consumer class action concerning allegedly defective MyFord Touch infotainment systems, which settled for $17 million shortly before trial.)

- *Weeks v. Google LLC*, 5:18-cv-00801-NC, 2019 U.S. Dist. LEXIS 215943, at *8-9 (N.D. Cal. Dec. 13, 2019) (Mr. Johns was co-lead counsel – and successfully argued against a motion to dismiss – in this defective smartphone class action. A $7.25 million settlement was reached, which Magistrate Judge Nathanael M. Cousins described as being an "excellent result.")

- *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC (D. Colo.) (Mr. Johns served as co-lead counsel of behalf of a class of millions of cardholders who were impacted by a data breach at Chipotle restaurants. After largely defeating a motion to dismiss filed by Chipotle, the case resulted in a favorable settlement for affected consumers. At the final approval of the settlement, the district court noted that class counsel has "extensive experience in class action litigation, and are very familiar with claims, remedies, and defenses at issue in this case.")

- *Bray et al. v. GameStop Corp.*, 1:17-cv-01365-JEJ (D. Del.) (Mr. Johns served as co-lead counsel for consumers affected by a data breach at GameStop. After largely defeating a motion to dismiss, the case was resolved on favorable terms that provided significant relief to GameStop customers. At the final approval hearing, the District Judge found the settlement to be "so comprehensive that really there's nothing else that I need developed further," that "the settlement is fair," "reasonable," and "that under the circumstances it is good for the members of the class under the circumstances of the claim.")

- *In re: Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litig.*, No. 15-cv-18-JLL-JAD (D.N.J.) (Mr. Johns served on the Plaintiffs' Steering Committee in this MDL proceeding, which involved allegedly defective wood-composite decking, and which ultimately resulted in a $20 million settlement.)

- *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.) (Mr. Johns was actively involved in these Multidistrict Litigation proceedings, which involve allegations that dozens of banks reorder and manipulate the posting order of debit transactions. Settlements collectively in excess of $1 billion were reached with several banks.  Mr. Johns was actively involved in prosecuting the actions against U.S. Bank ($55 million settlement) and Comerica Bank ($14.5 million settlement).)

- *Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation,* No. 1:10-cv-00264-CAB (N.D. Ohio) (Mr. Johns was the primary associate working on this case which resulted in a $20 million settlement on behalf of hospitals and surgery centers that purchased a sterilization device that allegedly did not receive the required pre-sale authorization from the FDA.)

- *West v. ExamSoft Worldwide, Inc.,* No. 14-cv-22950-UU (S.D. Fla.) (Mr. Johns was co-lead counsel in this case which resulted in a $2.1 million settlement on behalf of July 2014 bar exam applicants in several states who paid to use software for the written portion of the exam which allegedly failed to function properly)

- *Henderson v. Volvo Cars of North America, LLC,* No. 2:09-cv-04146-CCC-JAD (D. N.J.) (provided substantial assistance in this consumer automobile case that settled after the plaintiffs prevailed, in large part, on a motion to dismiss)

- *In re Marine Hose Antitrust Litig.,* No. 08-MDL-1888 (S.D. Fla.) (settlements totaling nearly $32 million on behalf of purchasers of marine hose.)

- *In re Philips/Magnavox Television Litig.,* No. 2:09-cv-03072-CCC-JAD (D. N.J.) (settlement in excess of $4 million on behalf of consumers whose flat screen televisions failed due to an alleged design defect. Mr. Johns argued against one of the motions to dismiss.)

- *Allison, et al. v. The GEO Group*, No. 2:08-cv-467-JD (E.D. Pa.), and *Kurian v. County of Lancaster*, No. 2:07-cv-03482-PD (E.D. Pa.) (settlements totaling $5.4 million in two civil rights class action lawsuits involving allegedly unconstitutional strip searches at prisons)



**Samantha E. Holbrook,** a partner at Shub & Johns LLC, has extensive experience in consumer protection class action litigation. Prior to joining the firm, Ms. Holbrook practiced at two different national class action law firms where she represented consumers and investors in nationwide class actions. Ms. Holbrook has experience handling and litigating all aspects of the prosecution of national class action litigation asserting claims under state and federal law challenging predatory lending practices, product defects, breach of fiduciary duty, antitrust claims, consumer fraud and unfair and deceptive acts and practices in federal courts throughout the country.

Ms. Holbrook has also obtained favorable recoveries on behalf of multiple nationwide classes of borrowers whose insurance was force-placed by their mortgage services.

Ms. Holbrook received her law degree from Temple University Beasley School of Law. While in law school, she served as the President of the Moot Court Honor Society and President of the Student Animal Legal Defense Fund. She was also a member of Temple's nationally recognized Trial Team. Upon graduating, she served as an adjunct professor for Temple coaching

its Trial Team from 2013-2018. Ms. Holbrook received her undergraduate degrees from the Pennsylvania State University in Political Science and Spanish. While in college, Ms. Holbrook spent a semester studying abroad in Sevilla, Spain. She is proficient in Spanish. Ms. Holbrook also currently serves as the Board President for Citizens for a No-Kill Philadelphia, a Philadelphia-based animal welfare advocacy organization, and serves on the Board of Directors of City of Elderly Love, a senior-focused animal rescue organization.

Ms. Holbrook has been recognized by Pennsylvania Super Lawyers as a Rising Star for each year from 2020-2023. She has also been recognized as a Top Young Rising Attorney in Pennsylvania in 2020, and a Pennsylvania & Delaware Top Attorneys Rising Stars in 2021. She is admitted to practice in all federal and state courts in Pennsylvania and New Jersey.

**Over the course of her career, Ms. Holbrook has provided substantial assistance in the prosecution of the following cases:**

- *Suarez v. Nissan North America*, No. 3:21-cv-00393 (M.D. Tenn.) (appointed lead class counsel in a consumer class action alleging defective headlamps in Nissan Altima vehicles which reached a settlement valued at over $50 million that provides reimbursements, free repairs, and an extended warranty);

- *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K (N.D. Tex.) (appointed as additional interim class counsel on behalf of consumers whose sensitive payment card information was exposed in a data breach at Dickey's restaurant chains);

- *In re Wawa, Inc. Data Security Litig.*, No. 2:19-cv-06019-GEKP (E.D. Pa.) (achieved $12 million settlement on behalf of consumers whose sensitive payment card information was exposed to criminals as part of a highly-publicized data breach);

- *Lacher et al v. Aramark Corp., 2:19-cv-00687* (E.D. Pa. 2019) (represented a class of Aramark's current and former managers alleging that Aramark breached its employment contracts by failing to pay bonuses and restricted stock unit compensation to managers nationwide);

- *Turner v. Sony Interactive Entertainment LLC*, No. 4:21-cv-02454-DMR (N.D. Cal.) (class action lawsuit alleging that Sony's PlayStation 5 DualSense Controller suffers from a "drift defect" that results in character or gameplay moving on the screen without user command or manual operation of the controller thereby compromising its core functionality);

- *Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A.,* 09-CV-686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012) (approving $150 million settlement); and

- *In re 2008 Fannie Mae ERISA Litigation*, Case No. 09-cv-1350 (S.D.N.Y.) ($9 million settlement on behalf of participants in the Federal National Mortgage Association Employee Stock Ownership Plan).



**Andrea Bonner** is an Associate at Shub & Johns. She received her law degree from the Villanova University Charles Widger School of Law where she wrote for the Environmental Law Journal. Following graduation, she clerked for the Honorable Judge Pereksta of the New Jersey Superior Court. She then practiced Labor and Employment law at a regional mid-sized firm that is headquartered in Philadelphia. During this time, Andrea became interested in plaintiff work and the ability to advocate for clients no matter their background or circumstances. Andrea is an enthusiastic member of the Shub & Johns' team and looks forward to working alongside her colleagues on Class Action claims.



**Damian Gomez** joined Shub & Johns LLC as an intake paralegal in March 2022. Damian graduated from the University of Texas at Austin in 2021 with a Bachelor's degree in History with a focus on Classical Studies, as well as a Certificate in Creative Writing. Damian's prior professional experiences include building relationship and communication skills with clientele while working as an Intake Specialist at Filevine, a legal software company. Various courses in copywriting and email marketing have alike prepared him for his initial role as intake paralegal at Shub & Johns.

Damian's current title at Shub & Johns is Client Intake Specialist. His responsibilities include conducting widespread investigations and initial research into potential class action and consumer protection cases, interviewing and vetting potential clients and class representatives, and assisting in legal projects as necessary. Aside from legal assistance, Damian manages Shub & Johns's Marketing



and Outreach ventures, writes for and oversees the Shub & Johns's website content, and runs Shub & Johns social media accounts.



**Lacey Russo** began her career in the legal field in 2001, working in the Intellectual Property group at an international AmLaw 100 firm. She continued working on complex litigation matters, including consumer protection, ERISA, antitrust and fiduciary duty protection for over 15 years at a large plaintiffs' class action law firm before joining Shub & Johns in 2023. Lacey has worked on cases before state, federal and appellate courts across the country. She brings experience in assisting attorneys through every aspect of the litigation process.

Lacey studied at Villanova University and Algonquin College, graduating in 1999 with a bachelor's degree in paralegal studies.

# **EXHIBIT B**

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC'S FIRM RESUME**



**Gary M. Klinger** is a Partner at Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg").[1] At only 37-years old, Mr. Klinger has gained extensive experience serving as leadership in numerous high-profile consumer and privacy class actions. Notably, Mr. Klinger has settled on a class-wide basis more than forty class actions, the majority of which were privacy cases, as lead or co-lead counsel recovering more than a hundred million dollars for consumers in the process. Some of Mr. Klinger's representative cases include the following:

- Carrera Aguallo v. Kemper Corp., Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger obtained final approval of a class-wide settlement valued at $17.6 million for a major class action involving more than six million consumers);
- Heath v. Insurance Technologies Corp., No. 21-cv-01444 (N.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $11 million);
- In Re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation, 2:22-md-03025-MHW-CMV (N.D. Ohio) (where Mr. Klinger serves as one of the lead attorneys in multi-district litigation against Procter & Gamble and successfully reached a settlement valued over $10 million);
- Smid v. Nutranext, LLC, Case No. 20L0190 (Cir. Ct. St. Clair, County) (class counsel in consumer class action involving heavy metals in prenatal vitamins; final approval granted to $7M settlement)
- In re: Herff Jones Data Breach Litigation, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.35 million);
- In re: CaptureRx Data Breach Litigation, No. 5:21-cv-00523-OLG (W.D. Tex.) (where Mr. Klinger obtained approval of a class-wide settlement for $4.75 million);
- In re Arthur J. Gallagher Data Breach Litigation, No. 1:21-cv-04056 (N.D. Ill.) (where Mr. Klinger serves as appointed co-lead counsel to represent more than 3 million class members in a major class action).

Mr. Klinger has also successfully litigated class actions through contested class certification. In *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id.* At the time, it was the largest litigation class ever to be certified for violations of the Telephone Consumer Protection Act. In a nationwide class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel).

Mr. Klinger is admitted to practice in the State of Illinois and the following federal courts: The U.S. District Court of Colorado, The U.S. District Court of Central District of Illinois, The U.S.

---

[1] A copy of Milberg's Firm Resume is attached hereto as Exhibit A.

District Court of Northern District of Illinois, The U.S. District Court of Southern District of Illinois, The U.S. District Court of Southern District of Indiana, The U.S. District Court of Eastern District of Michigan, The U.S. District Court of District of Nebraska, The U.S. District Court of Eastern District of Texas, and The U.S. District Court of Eastern District of Wisconsin.

Mr. Klinger received his undergraduate degree and juris doctorate (*cum laude*) from the University of Illinois.

Mr. Klinger is presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

Mr. Klinger is also a member of the International Association of Privacy Professionals.



# FIRM RESUME



Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> **- THE NEW YORK TIMES**

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.


## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.


## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.


## INFORMATION TECHNOLOGY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients – both large and small – to change data security practices so that large corporations respect and safeguard consumers' personal data.


## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

# NOTABLE RECOVERIES

### $4 Billion Settlement
In re: Prudential Insurance Co. Sales Practice Litigation

### $3.2 Billion Settlement
In re: Tyco International Ltd., Securities Litigation

### $1.14 Billion Settlement
In Re: Nortel Networks Corp. Securities Litigation

### $1 Billion-plus Trial Verdict
Vivendi Universal, S.A. Securities Litigation

### $1 Billion Settlement
NASDAQ Market-Makers Antitrust Litigation

### $1 Billion Settlement
W.R. Grace & Co.

### $1 Billion-plus Settlement
Merck & Co., Inc. Securities Litigation

### $775 Million Settlement
Washington Public Power Supply System Securities Litigation

### $586 Million Settlement
In re: Initial Public Offering Securities Litigation

# LOCATIONS

**PUERTO RICO**
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

**CALIFORNIA**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

**FLORIDA**
2701 South Le Jeune Road
Coral Gables, Florida 33134

**ILLINOIS**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

**KENTUCKY**
19 North Main Street
Madisonville, Kentucky 42431

**LOUISIANA**
5301 Canal Boulevard
New Orleans, Louisiana 70124

**MICHIGAN**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

**NEW JERSEY**
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

**NEW YORK**
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

**NORTH CAROLINA**
900 West Morgan Street
Raleigh, North Carolina 27603

**SOUTH CAROLINA**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

**TENNESSEE**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

**WASHINGTON**
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

**WASHINGTON, D.C.**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052

**NETHERLANDS**

**UNITED KINGDOM**

