**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

.

|  |  |
|---|---|
| **IN RE: ONIX GROUP, LLC DATA BREACH LITIGATION** | Case No. 23-2288-KSM |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Benjamin F. Johns (PA Bar 201373)
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
bjohns@shublawyers.com

Gary M. Klinger
**MILBERG COLEMAN**
**BRYSON PHILLIPS**
**GROSSMAN PLLC**
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
gklinger@milberg.com

*Interim Co-Lead Class Counsel*
*[Additional Counsel on Signature Page]*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

III.  TERMS OF THE SETTLEMENT ..................................................................... 2

    A.  The Proposed Settlement Class .................................................................. 2

    B.  The Release ................................................................................................. 2

    C.  Settlement Benefits .................................................................................... 3

        1.  Documented Loss Payments ............................................................... 3

        2.  Credit Monitoring and Insurance Services ........................................ 3

        3.  Cash Fund Payment ............................................................................ 3

        4.  Data Security Commitments ............................................................... 4

    D.  Notice and Settlement Administration ....................................................... 4

    E.  Objections and Opt - Outs ........................................................................... 5

    F.  Attorneys' Fees, Costs, and Expenses, and Service Awards ...................... 5

    G.  Residual ....................................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 6

    A.  Plaintiffs and Class Counsel Adequately Represented the Class ............... 7

    B.  The Settlement Was Negotiated at Arm's Length ...................................... 8

    C.  The Relief Provided for the Class is Adequate .......................................... 8

    D.  The Settlement Treats Class Members Equitably Relative to Each Other ... 9

    E.  The *Girsh* Factors Favor Approval ........................................................... 9

        1.  The Complexity, Expense and Likely Duration of the Litigation ............. 9

        2.  The Reaction of the Class to the Settlement ....................................... 10

        3.  The Stage of the Proceedings and the Amount of Discovery Completed ......... 10

        4.  The Risks of Establishing Liability and Damages, and Maintaining the Class Action Through Trial ............................................................. 11

        5.  The Defendant's Ability to Withstand a Greater Judgment ................... 12

        6.  The Range of Reasonableness in Light of the Best Possible Recovery ......... 12

        7.  The Range of Reasonableness in Light of the Attendant Risks of Litigation ......... 13

    F.  The Court Should Confirm Certification of the Settlement Class ................ 13

1. The Class Meets the Requirements of Rule 23(a) ........................................................ 13

    a. The Class is so numerous that joinder is impracticable .................................... 14

    b. There are Questions of Law or Fact Common to the Class ............................... 14

    c. Plaintiffs' Claims are Typical of the Claims of the Class .................................. 14

    d. Plaintiffs and Class Counsel Adequately Represented the Class ....................... 14

2. The Class Meets the Requirements of Rule 23(b)(3) ................................................ 15

    a. Common Questions of Law or Fact Predominate ............................................... 15

    b. A Class Action is the Superior Method of Adjudicating This Case ................. 16

V. CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ................................................................... 14

*Bell Atl. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) ................................................................. 10

*Browne v. US Fertility, LLC*,
    No. 21-367, 2021 WL 2550643 (E.D. Pa. June 22, 2021) ....................... 12

*Fulton-Green v. Accolade, Inc.*,
    No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...................... 12

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ................................................................. 7

*Holden v. Guardian Analytics, Inc.*,
    No. 2:23-CV-2115, 2024 WL 2845392 (D.N.J. June 5, 2024) ............... 8, 9

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ......................................................... 11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .............................................................. 7, 10

*In re CertainTeed Fiber Cement Siding Litig.*,
    303 F.R.D. 199 (E.D. Pa. 2014) .......................................................... 11

*In re Citrix Data Breach Litig.*,
    No. 19-61350, 2021 U.S. Dist. LEXIS 112272 (S.D. Fla. June 10, 2021) ............... 11

*In re Diet Drugs Products Liability Litig.*,
    No. 99–20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) .................... 11

*In re Flat Glass Antirust Litig.*,
    191 F.R.D 472 (W.D. Pa. 1999) .......................................................... 15

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................. 7

*In re Processed Egg Prod. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) ....................................................... 14, 16

iv

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ............................................................... 12, 16

*In re Rutter's Data Sec. Breach Litig.*,
   511 F. Supp. 3d 514 (M.D. Pa. 2021) ...................................................... 11

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ................................................................ 7, 14

*In re Wawa, Inc. Data Sec. Litig.*,
   No. 19-6019,2022 WL 1173179 (E.D. Pa. Apr. 20, 2022) ....................... 13

*In re Zappos Security Breach Litig.*,
   No. 12-325, 2019 WL 12026706 (D. Nev. Dec. 23, 2019).......................... 13

*Linnins v. Haeco Americas, Inc.*,
   No. 16CV486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018)...................... 13

*Messner v. Northshore Univ.,*
   *Health Sys.*, 669 F.3d 802 (7th Cir. 2012) ............................................. 15

*Neuberger v. Shapiro,*
   110 F.Supp.2d 373 (E.D. Pa. 2000) ......................................................... 10

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .................................................................. 12

*Swinton v. SquareTrade, Inc.*,
   2019 WL 617791 (S.D. Iowa Feb. 14, 2019) .............................................. 9

*Taha v. Bucks Cnty.*,
   No. 12-6867, 2020 WL 7024238 (E.D. Pa. Nov. 30, 2020)........................ 10

*Vinh Du v. Blackford,*
   No. 17-cv-194, 2018 WL 6604484 (D. Del. Dec. 17, 2018)......................... 8

*Weiss v. Mercedes–Benz of N. Am., Inc.*,
   899 F. Supp. 1297 (D.N.J.1995) ............................................................. 11

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984)................................................................... 15

## **Rules**

Fed. R. Civ. P. 23 ...................................................................................... 8, 16

Fed. R. Civ. P. 23(a) .................................................................................... 6

Fed. R. Civ. P. 23(b)(3)............................................................................. 6, 16

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 6, 7, 8

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................ 7

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................................ 8

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................ 8

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(C)(iii) .......................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(C)(iv) .......................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................ 9

Fed. R. Civ. P. 23(e)(3) ............................................................................................... 7, 8

Fed. R. Civ. P. 23(a) and 23(b)(3) ................................................................................... 13

## **Other Authorities**

7A *Charles Alan Wright & Arthur R. Miller*,
    Fed. Practice and Procedures § 1778 (3d ed. 2011)................................................15

*Wright, Miller & Kane,* Fed. Practice & Procedure: Civil 2d § 1754..........................................16

## I.    INTRODUCTION

On June 14, 2024, the Court preliminarily approved the Settlement between Plaintiffs Eric Meyers, Donald Owens, Aida Albina Wimbush, Ashtyn Mark, Leah Simione, Melissa Lyston, and Angela Haynie ("Plaintiffs"), individually and as Class Representatives, and Defendant Onix Group, LLC ("Onix" or "Defendant") (collectively, the "Parties"), arising from a data security incident that Defendant discovered on or around March 27, 2023 (the "Data Incident").[1]  The Court conditionally certified a settlement class of approximately 308,942 people. Following preliminary approval of the Settlement, notice was successfully disseminated to members of the Settlement Class in accordance with the Court's preliminary approval order. The reaction to the Settlement has been positive: as of August 28, 2024 – with the claims filing deadline still over a month away – there have been nearly 3,000 claims filed for benefits under the Settlement, and no objections.

The preliminarily approved Settlement, as set forth in the executed Settlement Agreement ("Settlement," "Settlement Agreement," or "SA"), resolves Plaintiffs' claims on a class-wide basis. Nothing has changed with respect to the circumstances that compelled the Court to preliminarily approve the Settlement. The Settlement is fair, reasonable, and adequate, has been well-received by the Class, and satisfies all the criteria for final approval. Plaintiffs therefore now respectfully request that the Court finally approve the Settlement, so as to allow for the distribution of the settlement proceeds to class members who have filed claims, and otherwise conclude this litigation.

---

[1] Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of brevity and efficiency, Plaintiffs incorporate the Factual and Procedural Background outlined in Plaintiffs' Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 29-1) and Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards filed concurrently with the instant memorandum.

## III.    TERMS OF THE SETTLEMENT

### A.    The Proposed Settlement Class

The Proposed Settlement Class is defined as: All 308,942 natural persons whose Private Information was compromised in the Data Breach and who have not been confirmed to be deceased. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Onix, its subsidiaries, parent companies, successors, predecessors, and any entity in which Onix or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person. S.A. ¶ 1.41.

### B.    The Release

In exchange for the Settlement Benefits provided for under the Settlement Agreement, Class Members will release any and all claims against Onix and its Released Parties as set forth in the Settlement Agreement. The release is tailored to cover the claims that were asserted or that could have been asserted by Class Members related to the Data Breach.

### C.    Settlement Benefits

#### 1.    Documented Loss Payments

Class Members may submit a Documented Loss Payment claim seeking up to $5,000 per person for the reimbursement of Documented Losses with Reasonable Documentation. SA ¶¶ 1.15, 3.3(a). Documented Losses must be supported by reasonable documentation to show that the claimed loss is more likely than not a result of the Data Incident. *Id.* Any claim for a Documented Loss Payment that is rejected, if not timely cured, will instead be considered for a Cash Fund Payment. *Id*. ¶ 3.3(a).

#### 2.    Credit Monitoring and Insurance Services

Class Members have the option of claiming 12 months of Credit Monitoring and Insurance Services ("CMIS"). SA ¶ 3.3(b). The CMIS benefit will provide at a minimum three credit bureau monitoring services and $1 million in identity theft insurance. *Id.* CMIS benefits will be available to Class Members irrespective of whether they took advantage of any previous offering of credit monitoring from Defendant. *Id*. Class Members successfully claiming the credit monitoring service will have 12 months to activate it. *Id*.

#### 3.    Cash Fund Payment

Class Members may submit a claim for a pro rata cash payment without any supporting documentation. *Id*. ¶ 3.3(c). The amount of money each Class Member who submits an Approved Claim will receive will be calculated as follows:

> The Settlement Fund shall be used to make payments for the following: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) the costs of providing the CMIS; (iv) Approved Claims for Documented Loss Payments (up to $5,000 per claim); and (v) Approved Claims for Cash Fund Payments. The value of the Cash Fund Payments will be calculated by subtracting from the Settlement Fund the expenses listed as (i) to (iv) in the preceding sentence (i.e., the Net Settlement Fund). The Net Settlement Fund shall then be divided evenly by the total number of valid claims submitted by Class Members.

*Id*. ¶ 3.8. This settlement benefit allocation structure has been approved by courts in other data breach settlements. *See, e.g., Breneman v. Keystone Health*, No. 22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023); *In re Hope College Data Sec. Breach Litig*., No. 22-cv-01224-PLM (W.D. Mich. Jan. 3, 2024).

### 4.    Data Security Commitments

In addition to the foregoing Settlement Benefits, the Parties also have agreed as part of the Settlement, Onix will adopt, continue, and/or implement certain data security and privacy improvements designed to protect against similar data security incident in the future. *See id*. ¶ 2.1. The agreed upon security commitments are designed to maintain Defendant's security posture, and provide protection against threats now and in the future. *Id*. These security enhancements directly benefit the Settlement Class (without the need for a claim filing requirement) on a prospective basis, and Onix has agreed to confirm compliance with these measures to Class Counsel at their request on an ongoing basis. *Id*.

### D.    Notice and Settlement Administration

Pursuant to the Settlement Agreement, on or about June 25, 2024 Defendant's counsel provided Angeion with a data file containing 390,623 Class Member name and address records. *See* Admin. Decl. ¶ 5. Angeion reviewed the data and removed the duplicative records, resulting in 309,906 unique records (the "Class List"). *Id*. Onix, which provided Angeion the results of the deceased records review from Kroll, determined that 81,681 people were deceased. Angeion checked these addresses against the National Change of Address ("NCOA") database maintained by the USPS, then sent written notice to all of those Settlement Class Members by direct mail. *Id*. ¶ 7. Angeion also established a publicly available Settlement Website which allows Class Members to easily file their claims online or download and print the claim form, find general

information about the Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. *See* Admin Dec. ¶ 9. Angeion also established a toll-free hotline which utilizes an interactive voice response program to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. Admin Dec. ¶ 10.

As of August 28, 2024, direct notice had reached approximately 289,142 Settlement Class Members, a figure that represents 93.28% of the identified Class Members. Admin Decl. ¶ 8-9. As The claims process is ongoing, and Angeion has good reason to expect the submission of numerous additional claims by the October 17, 2024 Claims Deadline.[2]

### E.    Objections and Opt - Outs

The Court-approved Notice Plan informed each Settlement Class Member of their right to object to the Settlement by filing with the Court and submitting to the Settlement Administrator a written objection to the Settlement prior to the Objection Deadline. SA ¶ 6.9. The Objection Deadline is September 17, 2024. As of August 30, 2024, Angeion has received an objection to the Settlement. Admin. Decl. ¶ 13. The deadline for Class Members to opt-out of the Settlement is September 17, 2024. As of August 30, 2024, Angeion has received eight opt-out requests from Settlement Class Members. Admin. Decl. ¶ 8.

### F.    Attorneys' Fees, Costs, and Expenses, and Service Awards

Concurrently with the instant Motion, Class Counsel is submitting a motion for an award of attorneys' fees in the amount of $416,666.66; $12,032 for reasonable litigation costs and expenses; and $1,000 for each of the seven Class Representatives. *See* Pls.' Mot. for Attorneys'

---

[2] Class Counsel will be prepared to provide the Court with updated figures at the final approval hearing on November 20, 2024.

Fees, Expenses, and Service Awards (the "Fee Motion"). As is reflected in that submission, the requested fee award and expenses are reasonable and consistent with similar awards in similar cases. The Service Awards reflect the work the Class Representatives performed in assisting Class Counsel with this litigation, which included preparing and sitting for their depositions.

### G.    Residual

To the extent any monies remain in the Net Settlement Fund more than 120 days after the distribution of Settlement Payments, a subsequent Settlement Payment will be evenly made to all Class Members with Approved Claims for Cash Fund Payments who cashed or deposited the initial payment they received, assuming such payment is over $3.00. *Id*. ¶ 3.10. Should any remaining amount of the Net Settlement Fund be economically not distributable, the Parties shall petition the Court for permission to distribute the remaining funds to an approved non-profit recipient, providing the Court with details of the proposed non-profit recipient. *Id*.

## IV.    ARGUMENT

In granting preliminary approval, the Court considered the factors set forth in Fed. R. Civ. P. 23(e)(2) and concluded that it would likely be able to approve the settlement under the criteria described in Federal Rule of Civil Procedure 23(e)(2) and certify the settlement class under the criteria described in Rules 23(a)(a) and 23(b)(3). ECF No. 45. Final approval requires an analysis of many of the same factors that the Court previously considered at the preliminary approval stage.

Under the Federal Rules of Civil Procedure, class action settlements must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination, the court must "consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Class action settlements are presumptively fair where "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)). *See also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).

In determining whether a settlement is fair, reasonable, and adequate, courts in the Third Circuit consider the nine *Girsh* factors:

> (1) [T]he complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Warfarin*, 391 F.3d at 534-35 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). The Settlement here meets the standards for final approval pursuant to both Rule 23(e)(2) and the *Girsh* factors.

## A.    Plaintiffs and Class Counsel Adequately Represented the Class

Rule 23(e)(2)(A)'s requirement that "the class representatives and class counsel have adequately represented the class" is satisfied here. The Fee Motion includes a detailed discussion of Class Counsel's efforts in the litigation, the settlement negotiations, and implementation of the

terms of the Settlement Agreement. Each of the Plaintiffs likewise vigorously pursued the Class's interests. They devoted significant time and effort assisting Class Counsel with prosecution of the Class's claims, collecting evidence, completing questionnaires, producing documents, and preparing for and sitting for their depositions.

### B.    The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B)'s requirement that the proposal be "negotiated at arm's length" is also satisfied here. The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions, assisted by a neutral and highly experienced mediator. These circumstances weigh in favor of approval.

### C.    The Relief Provided for the Class is Adequate

This Rule 23(e)(2)(C) factor is encompassed by the *Girsh* factors below. *See Vinh Du v. Blackford*, No. 17-cv-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) (observing that the Rule 23(e)(2) factors largely overlap with the *Girsh* factors). The Rule 23(e)(2)(C)(ii) sub-factor regarding the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" weighs in favor of approval here. The Notice Plan was comprehensive and the claims process facilitated by the Settlement Website was simple. *See Holden v. Guardian Analytics, Inc.*, No. 2:23-CV-2115, 2024 WL 2845392, at *3 (D.N.J. June 5, 2024) (a similar notice plan implemented in a data breach settlement "satisf[ied] the requirements of Fed. R. Civ. P. 23 and due process."). The Rule 23(e)(2)(C)(iii) sub-factor regarding the "terms of any proposed award of attorney's fees" also weighs in favor of approval here. Class Counsel's proposed fee is reasonable for the reasons noted in the Fee Motion. The Rule 23(e)(2)(C)(iv)

reference to "any agreement required to be identified under Rule 23(e)(3)" encompasses only the Settlement Agreement.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement satisfies the Rule 23(e)(2)(D) requirement that it "treat[] class members equitably relative to each other." The plan of allocation treats all Class Members fairly and equally in relation to the strengths of their claims. Specifically the Settlement fairly protects the interests of all parties by providing cash compensation, up to $5,000, to Class Members who suffered out of pocket losses, and allows Class Members who have not yet suffered out of pocket losses the opportunity to protect themselves from future fraud by making a claim for credit monitoring. This is a sensible means by which to apportion the settlement benefits. *See, e.g., Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *8 (S.D. Iowa Feb. 14, 2019) ("There is no requirement that all class members in a settlement be treated equally. And, indeed, class members are not treated equally here. Some are entitled to cash refunds and others only benefit from a coupon and injunctive relief.").

### E.    The *Girsh* Factors Favor Approval

#### 1.    The Complexity, Expense and Likely Duration of the Litigation

In the absence of settlement, it is certain that the expense, duration, and complexity of protracted litigation that would result would be substantial and could have resulted in no recovery for the Settlement Class whatsoever. Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, extensive fact discovery, class certification proceedings, dispositive motions and, of course, a trial and appeal. *See Holden,* 2024 WL 2845392, at *5 (this *Girsh* factor satisfied in a data breach case for these reasons). Given the complex nature of the Data Incident at issue, a battle of the experts at trial is almost a certainty

and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice related to such. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on the merits, as well as any decision on class certification. This factor "weighs heavily" in the Court's analysis of the Settlement. *Cendant*, 264 F.3d at 233.

### 2.    The Reaction of the Class to the Settlement

The Settlement Class's reaction to the Settlement also weighs in favor of final approval. Nearly 3,000 claims have been filed as of August 28, 2024, with more than six weeks remaining before the Claims Deadline. Admin. Decl. ¶ 11. There have been no objections and only eight Class Members have opted out of the Settlement. Admin Decl. ¶¶ 12-13. The Class Members who have not yet responded likewise weigh in favor of the Settlement. *Neuberger v. Shapiro*, 110 F.Supp.2d 373, 378 (E.D. Pa. 2000) ("Courts have generally assumed that silence constitutes tacit consent to the agreement."). Here, the Class Members' reaction to the Settlement weighs heavily in favor of final approval. *See Taha v. Bucks Cnty.*, No. 12-6867, 2020 WL 7024238, at *5 (E.D. Pa. Nov. 30, 2020) ("[I]n most cases, 'a small proportion of objectors does not favor derailing the settlement.'") (quoting *Bell Atl. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)).

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

The amount and nature of the discovery conducted by Plaintiffs supports final approval. Class Counsel thoroughly investigated the Data Incident and Onix prior to filing their respective initial complaints. *See* Joint Declaration of Benjamin F. Johns and Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl.") ¶ 14. Plaintiffs also engaged in informal discovery in advance of the mediation, serving several requests for documents and information relevant to the Data Incident, to which Onix

provided written responses. *Id.* ¶ 9. Class Counsel's well-informed decision as to the adequacy of the proposed Settlement weighs in favor of final approval.

### 4.    The Risks of Establishing Liability and Damages, and Maintaining the Class Action Through Trial

"[T]he risks surrounding a trial on the merits are always considerable." *In re Diet Drugs Products Liability Litig.*, No. 99–20593, 2000 WL 1222042, at *61 (E.D. Pa. Aug. 28, 2000) (quoting *Weiss v. Mercedes–Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J.1995), *aff'd*, 66 F.3d 314 (3d Cir.1995)). Plaintiffs' claims are well-supported, but subject to credible defenses and inherent risks. Were the case to continue, Plaintiffs would face a number of delays and challenges, particularly including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining class certification through trial. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact .... That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

Data breach cases are particularly risky given the unique issues they raise relating to causation and damages, among others. *See In re Citrix Data Breach Litig.*, No. 19-61350, 2021 U.S. Dist. LEXIS 112272, at *7 (S.D. Fla. June 10, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("[T]he dearth of precedent makes continued litigation more risky. The parties have pointed the Court to only one non-settlement data-breach class that has been certified in federal court to date.") (citation omitted). And several claims in data breach cases, including cases in this Circuit, have failed even at the pleading stage. *See In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 523-26 (M.D. Pa. 2021)

11

(dismissing claims of certain plaintiffs who had not experienced fraud but alleged "only possible future injuries and prophylactic measures to avoid those potential injuries"); *Browne v. US Fertility, LLC*, No. 21-367, 2021 WL 2550643 (E.D. Pa. June 22, 2021) (same).

Even if the Court certified a litigation class, there is a risk of de-certification or appeal of the Court's decision by Onix, and no guarantee that class status would be maintained. *See, e.g., Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). The Settlement avoids those risks and maximizes Class Members' recovery. This factor favors final approval of the Settlement.

### 5.    The Defendant's Ability to Withstand a Greater Judgment

Defendant's ability to withstand judgement is not at issue here. This factor is neutral as to final approval.

### 6.    The Range of Reasonableness in Light of the Best Possible Recovery

"The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing … with the amount of the proposed settlement.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323-24 (3d Cir. 2011) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998)).

Here, the value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Plaintiff understands and appreciates that Defendant will assert a number of potentially case dispositive defenses. Proceeding with litigation would open up Plaintiffs to risks inherent in trying to achieve and maintain class certification and prove liability. It is obvious Plaintiffs' success at trial is far from certain, and every day that passes

is another day that Plaintiffs and Class Members go without the reimbursement provided by the Settlement. Through the Settlement, Plaintiffs and Class Members will gain significant benefits without having to face further risk of not receiving any relief at all.

### 7.    The Range of Reasonableness in Light of the Attendant Risks of Litigation

The Settlement here compares favorably with settlements in other data breach cases. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019,2022 WL 1173179, at *1 (E.D. Pa. Apr. 20, 2022) (finally approving settlement providing for gift cards worth up to $15 or reimbursement of out-of-pocket losses up to $500), *vacated and remanded on other grounds*, 85 F.4th 712, 727 (3d Cir. 2023).[3] *See also Linnins v. Haeco Americas, Inc.*, No. 16CV486, 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was accessed in data breach); *In re Zappos Security Breach Litig.*, No. 12-325, 2019 WL 12026706, at *2 (D. Nev. Dec. 23, 2019) (data breach settlement provided "10% coupon" for Zappos goods).

### F.    The Court Should Confirm Certification of the Settlement Class

Nothing has changed that should affect the Court's well-founded determination on preliminary approval that at the final approval stage the court would certify the settlement class under the criteria described in Rules 23(a) and 23(b)(3). All of the Rule 23(a) and 23(b)(3) requirements continue to favor class certification.

### 1.    The Class Meets the Requirements of Rule 23(a)

The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. The Settlement Class meets those requirements.

---

[3] The Third Circuit vacated and remanded the district court's holding only as to attorneys' fees (for reasons not relevant to this case), and left the court's approval of the settlement in place.

### a.    The Class is so numerous that joinder is impracticable

The Settlement Class consists of approximately 309,000 individuals. This readily satisfies the numerosity requirement. *See, e.g., In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 260 (E.D. Pa. 2012) (numerosity requirement generally satisfied if the class exceeds 40 members).

### b.    There are Questions of Law or Fact Common to the Class

"A finding of commonality does not require that all class members share identical claims." *Warfarin*, 391 F.3d at 530. The commonality requirement requires only that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Id*. at 527-28. Here, the central issues posed by this litigation are whether Onix had a duty to protect Plaintiffs' and Class Members' information from unauthorized access, and whether Plaintiffs and Class Members were injured by Onix's failure to do so. These are common questions subject to common proof that can be answered on a class-wide basis.

### c.    Plaintiffs' Claims are Typical of the Claims of the Class

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994). Here, Plaintiffs' claims are virtually identical to those of other Settlement Class Members. They are all predicated on the same alleged conduct by Onix: failure to safeguard their personal information. Onix's liability for the Data Incident does not depend on individualized circumstances of either Plaintiffs or other Settlement Class Members.

### d.    Plaintiffs and Class Counsel Adequately Represented the Class

"Adequate representation depends on two factors: (a) the Plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiffs

must not have interests antagonistic to those of the class." *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984) (citation omitted). As to the first of those factors, Class Counsel respectfully submit that they have adequately represented the interests of the class here. In negotiating the Settlement Agreement Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other cases involving data breaches and consumer privacy. This understanding of the intricacies of the data breach and consumer privacy space provided class counsel with the tools and perspective to achieve and outstanding recovery for the class.

As to the second of the "adequate representation" factors, a potential conflict between plaintiffs and absent class members is disabling for Rule 23 purposes only if it is "apparent, imminent, and on an issue at the very heart of the suit." *In re Flat Glass Antirust Litig.*, 191 F.R.D 472, 482 (W.D. Pa. 1999). In this case, there is no evidence tending to suggest any conflict at all between the Plaintiffs' interests and those of other Settlement Class Members, much less one sufficient to raise questions as to Plaintiffs' adequacy.

### 2.    The Class Meets the Requirements of Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) when: (i) common questions of law or fact "predominate" over any individual questions, and (ii) a class action is "superior" to other available means of adjudication. Both of these requirements are satisfied here.

### a.    Common Questions of Law or Fact Predominate

Predominance is satisfied when "'common questions represent a significant aspect of a case and … can be resolved for all members of a class in a single adjudication.'" *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1778 (3d ed. 2011)). Questions common to all Class Members predominate here. Several case-dispositive questions could be resolved

identically for all members of the Class, such as whether Onix had a duty to exercise reasonable care in safeguarding Settlement Class Members' personal and health information, and whether Onix's failure to do so constitutes a breach of that duty. This case involves a single data security incident that impacted all Class Members whose data was stolen, giving rise to claims that all share the same common nucleus of facts and law. The issues raised can be resolved using the same evidence for all Class Members. They are the types of predominant questions that make a class-wide adjudication entirely feasible.

### b.    A Class Action is the Superior Method of Adjudicating This Case

Class certification is appropriate if a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "'The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Eggs*, 284 F.R.D. at 264 (quoting *In re Prudential Ins.*, 148 F.3d at 316). That balance weighs heavily in favor of the superiority of a class action here. Individual lawsuits by Class Members would be unfeasible in light of the substantial costs of litigation as compared to the relatively limited damages recoverable by any one Settlement Class Member. Only resolution on a class basis would effectuate the goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. Wright, Miller & Kane, Fed. Practice & Procedure: Civil 2d § 1754.

### V.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that assures Class Members of prompt and meaningful relief. The Settlement Agreement is well within the range of

approval and complies with the dictates of Rule 23. For these reasons and the other reasons detailed

herein, Plaintiffs respectfully request that the Court certify the Class for settlement purposes and

grant their Motion for Final Approval of Class Action Settlement.

Dated: September 3, 2024                      Respectfully submitted,

 

_____

Benjamin F. Johns (PA Bar 201373)
Samantha E. Holbrook (PA Bar 311829)
Andrea L. Bonner (PA Bar 332945)
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com
abonner@shublawyers.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL  60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Co-Lead Counsel for Plaintiffs*

Bryan L. Bleichner*
Phillip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste 1700
Minneapolis, MN  55401
Telephone: (612)767-3602
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

17

Nicholas Sandercock
**SIRI & GLIMSTAD LLP**
745 5th Avenue, Suite 500
New York, NY 10151
Telephone: (212) 532-1091
nsandercock@sirillp.com


Gary E. Mason*
Danielle Perry*
Lisa A. White*
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
lwhite@masonllp.com


James M. Evangelista*
**EVANGELISTA WORLEY LLC**
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
Telephone: (404) 205-8400
Fax: (404)205-8395
jim@ewlawllc.com


Jennifer S. Czeisler*
**STERLINGTON PLLC**
One World Trade Center
85th Floor
New York, New York 10007
Telephone: (212) 433-2993
Jen.czeisler@sterlingtonlaw.com

18

James A. Francis
John Soumilas
Lauren KW Brennan
Jordan Sartell*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Telephone: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com
jsartell@consumerlawfirm.com

David S. Almeida*
Elena A. Belov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL  60614
Telephone: (312) 576-3024
david@almeidalawgroup.com
elena@almeidalawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*

*admitted *pro hac vice*

19